BERGER v WEBER

Docket No. 61348. Argued October 3, 1979 (Calendar No. 10).—Decided March 30, 1981. Rehearing denied *post,* 1155.

Christine V. Berger and Wayne D. Berger brought an action against Albert E. Weber, Becker Leasing Company, Inc., and Star of the West Milling Company for damages arising when Christine Berger's automobile was struck by a truck owned and operated by the defendants. Wayne Berger also sought damages as the next friend of the plaintiffs' retarded minor daughter Denise for her loss of society, companionship, love, and affection of her mother, who was severely injured in the accident. The Ingham Circuit Court, Thomas L. Brown, J., entered judgment on a verdict for the parents, but granted a summary judgment for the defendants as to Denise's claims on the ground that a child has no cause of action for the loss of a parent's society and companionship. The Court of Appeals, D. E. Holbrook, Jr., P.J., and V. J. Brennan and Bronson, JJ., affirmed the judgment for the parents, but reversed the summary judgment, deciding that a child has such a cause of action where the parent is "severely" injured (Docket No. 27377). Defendants appeal. In an opinion by Justice Kavanagh, joined by Justices Williams, Fitzgerald, and Moody, the Supreme Court *held:*

1. Lack of precedent cannot absolve a common-law court from responsibility for adjudicating each claim that comes before it on its own merits. Here the child's claim must be

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 6, 7, 12, 13] 59 Am Jur 2d, Parent and Child § 111.
  Child's right of action for loss of support training, parental attention, and the like against a third person negligently injuring parent. 69 ALR3d 528.
[2, 4-6, 7] 15A Am Jur 2d, Common Law § 3.
  20 Am Jur 2d, Courts §§ 64, 67.
[3, 7, 12] 41 Am Jur 2d, Husband and Wife § 447 *et seq.*
[4-7] 57 Am Jur 2d, Negligence § 10.
[8] 57 Am Jur 2d, Negligence §§ 33, 127, 132.
[9-11, 13] 57 Am Jur 2d, Negligence §§ 165 *et seq.,* 175.
[12] 16A Am Jur 2d, Constitutional Law § 793.

considered in the light of conditions pertinent to modern society, and the reasons urged for denying the cause of action must be weighed. Existing judicial and legislative policies warrant recognizing a child's cause of action for loss of the society and companionship of a parent injured by negligence. The reasons advanced by the defendants do not justify denying the cause of action the plaintiff seeks.

2. The distinction urged by the defendants, that a spouse's action for loss of consortium includes the impairment or destruction of the sexual relations of the couple and that no similar element exists in the child's claim, is not significant enough to deny the child's claim. Sexual relations are but one element of the spouse's action for loss of consortium. The other elements—love, companionship, affection, society, comfort, services, and solace—are similar in both relationships and in each are deserving of protection. The prospect of multiple suits is also not a reason to deny the claim. Multiple actions arising out of the same tortious act may result whenever the act injures more than one person or property owned by more than one person, or when the injured persons are minors. When a new cause of action is created, litigation may be increased. However, the rights of a new class of tort plaintiffs should be forthrightly judged on their own merits.

3. It is not anomalous to allow a child to recover for negligent invasion of his family interest when he is specifically prohibited from recovering for intentional, direct invasion of his family interest under the statute which bars suits for alienation of affections. One may recover for negligent injury or death of a spouse, and a child may recover for the death of a parent caused by negligence. The real anomaly would be to allow a child to recover for the loss of a parent's society and companionship which attends the parent's death but to deny it when the loss attends the parent's injury. Recognizing the child's cause of action may result in increased insurance costs, but compensating a child who has suffered emotionally because of the deprivation of a parent's love and affection may provide the child with the means of adjustment to the loss. The child receives the immediate benefit of the compensation, but society will also benefit if the child is able to function without emotional handicap.

4. The injury here is no more remote than the injury sustained when the parent is negligently killed. While the loss of society and companionship is an intangible loss to the child, it is a genuine one, and requiring the jury to evaluate the child's damages is no more speculative than evaluating other types of

intangible losses, *e.g.,* pain and suffering, loss of society and companionship in wrongful death actions, and loss of a spouse's consortium. Rather than having juries make blind calculations of the child's loss in determining an award to the parent, an independent action for the child which resulted in a double recovery could be openly argued in court, and the jury could be instructed to consider the child's loss separately. The award would accrue directly to the child rather than being lumped with that of the parent who may or may not spend it for the child's benefit.

5. Children have been prevented from recovering for loss of parental consortium by judicial decision. The Court should remove the obstacle; the cause of action here is not so complex that the Court should defer action to the Legislature. A child may recover for loss of a parent's society and companionship caused by tortious injury to the parent, and the action is not limited to cases of "severely" injured parents. The need for any limitations on the action beyond those attendant upon the comparable cause of action by a spouse should await demonstration.

Affirmed as modified.

Justice Levin, joined by Chief Justice Coleman and Justice Ryan, dissented. He would not authorize such an action.

1. The law of negligence was created by common-law judges and, therefore, it is unavoidably the Court's responsibility to continue to develop or limit the development of that body of law absent legislative directive. The bounds of recovery, no less than the conditions of liability, are judicially drawn and subject to judicial alteration. Decisions delineating the extent of tort liability, however, are more than exercises in logic: they are pronouncements of social policy which should reflect the often subtle balance of interests involved. Logic and even abstract justice must defer to overall policy in the appraisal of the justification for judicial changes in the common law.

2. Twenty years ago the Court concluded that the interest of a wife in compensation for the loss of her injured husband's society and companionship outweighed the interest of a negligent defendant in freedom from liability for such loss, although his liabilities as a result of his negligent act must have some reasonable limitation. The Court now balances the interest of an injured person's child in monetary redress for injury to the parent-child relationship against the consequences of imposing yet another potential liability upon a negligent defendant—a liability the additional cost of which will be spread among the citizens of the state through increased insurance premiums. In

responding, it is not enough to invoke analogies. An independent re-examination of the policy considerations implicated by the creation of such a separate cause of action is called for.

3. The action for loss of consortium is a historical curiosity, which originated at a time when a husband was considered to possess a proprietary right in his wife's services, and conduct of a third person which impaired her ability to render services was regarded as causing him pecuniary loss. The earliest English cases upholding a husband's right to bring an action for injury to himself resulting from wrongful conduct in respect to his wife involved intentional torts. Then the courts, without apparent recognition that they were extending the common law, permitted husbands to recover for loss of consortium resulting from negligently inflicted injury as well as intentional injury. And, beginning in 1950, a series of American courts extended to wives the right to recover from a negligent tortfeasor for loss of spousal consortium. The first step having been taken, the second logically followed, although equality between husband and wife could as well have been achieved by abolishing the husband's action as by recognizing the wife's. The soundness of the first step has, however, been questioned, and the Court should not proceed further along the same path merely because to do so would appear to be logical.

4. The concepts of duty and proximate cause, reserved for judicial determination, serve to limit the scope of a defendant's liability for negligence. Both depend in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable. Foreseeability is not, however, the only criterion. It is foreseeable that any injured person will be party to a number of relationships the other parties to which will suffer losses, tangible and intangible, should the relationship be interrupted. Not every loss can be made compensable in money damages, and legal causation must terminate somewhere. In delineating the extent of a tortfeasor's responsibility for damages, the courts must locate the line between liability and non-liability at some point, a decision which is essentially political. The Court does not indicate that it is prepared to draw a line somewhere or anywhere. Instead, it quotes with approval a statement of the Court of Appeals that the rights of a new class of plaintiffs in tort should be judged on their own merits, rather than engaging in speculation as to where it will all end—as if the merits of the plaintiff's claim can be resolved in the abstract, focusing solely on the justness and fairness from the child's point of

view of recognizing a right of recovery in this sympathetic case without regard to countervailing considerations of policy and thoughtful consideration of where it will all end.

5. The analogy to the wrongful death act suggests that a like analogy may be drawn in future cases where a sibling or other member of that class who would be permitted to recover under the wrongful death act if an injured person dies seeks to recover for loss of the society and companionship of an injured person who survives. Distinctions between the parent-child relationship and other relationships can indeed be made, but the Court's analysis, which minimizes the distinctions that could be drawn in this case, holds little promise for drawing such distinctions in other cases. Moreover, the elements—love, companionship, affection, society, comfort, services and solace—which the Court identifies as similar in the marital and parent-child relationships are also present in other relationships: brothers and sisters, a child and a grandparent, or a cohabiting unmarried couple. The concept of allowing a person to recover for consequential loss resulting from physical injury to another person is an idiosyncracy in the law. Reasonable limits on liability for the consequences of negligent acts must be imposed. Review of the policy considerations leads to the conclusion that they do not favor redrawing the line between liability and non-liability to create a separate cause of action for loss of parental consortium.

6. The balance between the child's interest in compensation for the loss of society and companionship of an injured parent and the tortfeasor's interest in freedom from additional liability, with due consideration to the social consequences of each alternative, weighs against recognition of the child's claim. That conclusion is influenced by considerations including the uncertainty that recognizing the proposed cause of action will yield a significant social benefit, the additional economic burden imposed upon the general public by expanding recovery to a new category of indirect injury likely to be associated with a large percentage of accidents, the nature of the loss asserted, the lack of immediate connection between the plaintiff and the defendant, and the difficulty of objective demonstration and evaluation of the child's injury.

7. It is preferable to minimize the number of actions which can be brought for damages arising out of a single tortious act. The wisdom of creating a new cause of action depends in part upon whether other legal avenues are adequate to redress part or all the asserted loss. Where the primary victim recovers for his own injuries, the most direct consequences of the

accident are compensated and the party at fault does not escape liability. In the context of actions not brought by the primary victim, however, objections to the uncertainty of the intangible loss alleged and to the inherent inadequacy of money damages as compensation loom larger, especially since the primary victim may also recover a sum for intangible, uncertain injuries. Considerations which would not deter a court from compensating a primary victim may thus, notwithstanding the present anomaly of recovery for spousal consortium, support a refusal further to expand the scope of liability.

8. In contrast to the intangibility of the alleged injury and the difficulty of appraising it stands the certainty that creating a new basis for recovery will impose an added economic burden upon society. Since virtually every serious injury to a parent would engender a claim for loss of consortium on behalf of each of his or her children, the expense of settling or litigating such claims would be sizeable. In the typical automobile accident case, because of policy limits, the less serious the parent's injury, the more likely it is that money will be available to pay claims for loss of parental consortium. The benefits of recognizing the child's cause of action will be unevenly and adventitiously distributed, more so than ordinarily.

9. There is a limit to the range of injuries and the dollar amount of recovery which can be spread throughout society by means of the interaction of the tort litigation and insurance systems. Increasing the load on the reparation system by recognizing causes of action in secondary victims in addition to the primary victim's action must increase insurance premiums, decrease participation in the system by marginal insureds, and perhaps decrease the amount that an insurer will willingly pay to the primary victim, thereby increasing litigation. It is problematic whether the means of adjustment can be purchased with money, whether awards will be so applied, or whether compensation will be received before the passage of time or the parent's recovery has worked a better adjustment.

10. The Equal Protection Clauses of the United States and Michigan Constitutions do not require recognition of a child's cause of action for loss of parental consortium when the parent does not die simply because the spouse's action is judicially recognized or because the wrongful death act gives the child the right to recover when the parent dies. The Court would not be justified in invoking a more rigorous standard of equal protection review than to require that the classification bear a reasonable relation to the object of the action for loss of consortium—a modified form of the "middle tier" or "means"

test. One may reasonably distinguish the husband-wife relationship from the parent-child relationship in deciding whether to provide a remedy for loss of an injured person's society and companionship. Limiting the action for loss of an injured person's society and companionship to the spouse assures that the typically greater loss will be compensated without unduly burdening the judicial system or engendering excessive social costs. Nor does it violate equal protection to deny the children of negligently injured parents the right to recover losses for which the children of fatally injured parents are compensated under the wrongful death act. There are two significant distinctions between the child whose parent is killed and one whose parent is disabled, both of which flow from the fact that in the latter case the living victim retains his or her own cause of action. Allowing recovery under the wrongful death act for the lost affection and society of the deceased assures that a meaningful remedy will be available in every case. But where the parent injured on account of the tortfeasor's conduct survives, so does the parent's cause of action for the injuries inflicted, and the availability of some reparation for disadvantage to the child and to the victim's family furnishes a sufficient basis for allowing the child to recover for lost society and companionship in the case of a parent's death but not in the case of parental injury.

11. The injured parent should be permitted, in his or her own action, to recover certain damages resulting from the effect of the parent's injury upon the child. Injury which removes a parent from the home for a substantial period, or which disables the parent from providing the degree of affection, society, and companionship previously provided to the child, may necessitate expenditures by the parent to obtain for the child services or companionship that the parent would normally have provided. Although the child should have no independent right of recovery, the cost of substitute services should be recoverable in the injured parent's action.

82 Mich App 199; 267 NW2d 124 (1978) affirmed.

OPINION OF THE COURT

1. ACTIONS — PARENT AND CHILD — LOSS OF SOCIETY.

A child may recover for loss of a parent's society and companionship caused by a negligent injury to the parent.

2. COMMON LAW — COURTS.

Lack of precedent cannot absolve a common-law court from

responsibility for adjudicating each claim that comes before it on its own merits.

3. ACTIONS — PARENT AND CHILD — HUSBAND AND WIFE — LOSS OF SOCIETY.

The elements of love, companionship, affection, society, comfort, service and solace are similar in the relation of husband and wife, and that of parent and child; in each case they are deserving of protection, and compensating a child who has suffered emotionally because of the deprivation of a parent's love and affection may provide the child with the means of adjustment to the loss without emotional handicap.

DISSENTING OPINION BY LEVIN, J.

4. NEGLIGENCE — COMMON LAW — COURTS.

*The law of negligence was created by common-law judges and, therefore, it is unavoidably the Court's responsibility to continue to develop or limit the development of that body of law absent legislative directive; the bounds of recovery, no less than the conditions of liability, are judicially drawn and subject to judicial alteration.*

5. NEGLIGENCE — COMMON LAW.

*Decisions delineating the extent of tort liability are more than exercises in logic: they are pronouncements of social policy which should reflect the often subtle balance of interests involved; logic and even abstract justice must defer to overall policy in the appraisal of the justification for judicial changes in the common law.*

6. ACTIONS — NEGLIGENCE — LOSS OF SOCIETY — COMMON LAW.

*It is not enough for the Court to invoke analogies in balancing the interest of an injured person's child in monetary redress for . injury to the parent-child relationship against the consequences of imposing yet another potential liability upon a negligent defendant; an independent re-examination of the policy considerations implicated by the creation of such a separate cause of action is called for.*

7. ACTIONS — NEGLIGENCE — LOSS OF SOCIETY — COMMON LAW.

*The soundness of extending the common law to permit recovery from a negligent tortfeasor for loss of spousal consortium has been questioned and the Court should not proceed further and permit a child to recover for loss of a parent's society and*

*companionship caused by a negligent injury to the parent
merely because to do so would appear to be logical; the common
law is free neither of some anomalies nor of everything illogi-
cal, but that is no reason for extending them.*

8. NEGLIGENCE — DUTY — PROXIMATE CAUSE.

*The concepts of duty and proximate cause, reserved for judicial
determination, serve to limit the scope of a defendant's liability
for negligence; both depend in part on whether it is foreseeable
that the actor's conduct may create a risk of harm to the
victim, and whether the result of that conduct and intervening
causes were foreseeable, but foreseeability is not the only
criterion.*

9. ACTIONS — NEGLIGENCE — SECONDARY VICTIMS — CONSEQUENTIAL
LOSS.

*The concept of allowing a person to recover for consequential loss
resulting from physical injury to another person is an idiosyn-
cracy in the law; reasonable limits on liability for the conse-
quences of negligent acts must be imposed, a decision which is
essentially political.*

10. ACTIONS — NEGLIGENCE — TORTS — SECONDARY VICTIMS — CON-
SEQUENTIAL LOSS.

*The extension for tort recovery beyond the primary victim re-
mains the exceptional case, despite the increased acceptance of
the spouse's action for loss of consortium; to the extent that a
second tort victim's loss is likely to be duplicated in the
primary victim's recovery, courts should be wary of creating
additional claims deriving from the same tortious act, particu-
larly where all injuries are localized within the same family
unit.*

11. ACTIONS — NEGLIGENCE — SECONDARY VICTIMS — LOSS OF SOCI-
ETY.

*There is a limit to the range of injuries and the dollar amount of
recovery which can be spread across society through the inter-
action of the tort litigation and insurance systems; where
recognition is sought for a new cause of action subjecting a
negligent defendant to liability to a child of the victim, the
inadequacy of monetary damages to make whole the loss suf-
fered, considered in light of the social cost of paying such
awards, and of the uncertainty that paying them will produce
any social benefit, constitutes a strong reason for refusing to
recognize the asserted claim.*

12. Constitutional Law — Equal Protection — Actions — Parent and Child — Loss of Society — Personal Injury — Wrongful Death.

   *The Equal Protection Clauses of the United States and Michigan Constitutions do not require recognition of a child's cause of action for loss of parental consortium when the parent does not die simply because the spouse's action is judicially recognized or because the wrongful death act gives the child the right to recover when the parent dies (US Const, Am XIV; Const 1963, art 1, § 2; MCL 600.2922[2]; MSA 27A.2922[2]).*

13. Actions — Personal Injury — Secondary Victims — Loss of Society — Damages.

   *An injured parent should be permitted, in his or her own action, to recover certain damages resulting from the effect of the parent's injury upon the child; injury which removes a parent from providing the degree of affection, society, and companionship previously provided to the child, may necessitate expenditures by the parent to obtain for the child services or companionship that the parent would normally have provided, and although the child should have no independent right of recovery, the cost of substitute services should be recoverable in the injured parent's action.*

*Church, Wyble, Kritselis, Anderson & Robinson, P.C.* (by *Thomas H. Hay* and *William N. Kritselis*), for plaintiffs.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Roger F. Wardle* and *Mary Ann Zito*) for defendants.

Amicus Curiae:

*Lopatin, Miller, Bindes, Freedman, Bluestone, Erlich & Rosen* (by *Michael Gagleard*) for Michigan Trial Lawyers Association.

Kavanagh, J. This action arose out of an automobile collision involving plaintiff Christine Berger and defendant-appellant Albert Weber.[1] It is

---

[1] This cause of action occurred before the no-fault insurance act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.,* became effective.

alleged that as a result of the accident, the plaintiff Christine Berger sustained severe and permanent psychological and physical injuries. Plaintiffs Wayne and Christine Berger filed a complaint on their own behalf and sought damages for medical expenditures, loss of income and loss of consortium. As next friend, Wayne Berger sought damages on behalf of his minor daughter,[2] Denise, for loss of society, companionship, love and affection of her mother Christine Berger.

A jury awarded Wayne and Christine Berger $142,000. The trial court granted defendants' motion for summary judgment as to the issue of liability for the minor daughter's loss of society and companionship. The Court of Appeals affirmed the jury award and reversed the ruling on the child's cause of action, holding that a child may maintain a cause of action for loss of parental society and companionship when a parent is "severely" injured. 82 Mich App 199, 201; 267 NW2d 124 (1978).

We granted leave to speak to the propriety of recognizing a cause of action for loss of parental society and companionship when a parent is negligently injured. After considering the competing policy considerations, we are satisfied that such a cause of action should be enforced.

I

Such a cause of action was unknown at common

_____

[2] Denise Berger was born severely retarded and physically handicapped in October of 1966. She died on July 16, 1977. No claim has been made on behalf of the Bergers' son who was born in November of 1964.

law and only one other jurisdiction recognizes this cause of action.[3]

In Michigan the Court of Appeals previously addressed the issue and concluded that a child does not have such a cause of action because of the lack of "statutory or prior judicial authority". *Hayrynen v White Pine Copper Co,* 9 Mich App 452, 455-456; 157 NW2d 502 (1968). Our Court by way of dicta, has stated in two cases that a child does not have an independent cause of action against a third party who negligently injures his parent.[4]

Lack of precedent cannot absolve a common-law court from responsibility for adjudicating each claim that comes before it on its own merits. As Justice SMITH observed in *Montgomery v Stephan,* 359 Mich 33, 38; 101 NW2d 227 (1960), "[o]ur oath is to do justice, not to perpetuate error". Here we must consider the child's claim in light of conditions pertinent to modern society and weigh the reasons urged for denying the cause of action.

## II

Plaintiffs assert that denying the action for loss of society and companionship to a child is inconsis-

---

[3] *Ferriter v Daniel O'Connell's Sons, Inc,* — Mass —; 413 NE2d 690 (1980); Anno: *Child's right of action for loss of support, training, parental attention, or the like, against a third person negligently injuring parent,* 69 ALR3d 528; *Borer v American Airlines, Inc,* 19 Cal 3d 441; 138 Cal Rptr 302; 563 P2d 858 (1977).

[4] In *Cugell v Sani-Wash Laundry Co,* 280 Mich 286, 289; 273 NW 571 (1937), our Court said: "A minor has no severable and personal right of action for injuries to his parent." Previously in *Blair v Seitner Dry Goods Co,* 184 Mich 304, 313; 151 NW 724 (1915), *overruled on other grounds Montgomery v Stephan,* 359 Mich 33; 101 NW2d 227 (1960), our Court stated that "[t]he minor children of an injured father and those of an injured mother may suffer on account of the injury, but it has never been considered that they had an action therefor".

tent with the public policy of this state. They point
out that Michigan has long recognized a cause of
action for loss of consortium in favor of spouses[5]
and that parents have an independent cause of
action for loss of services and other pecuniary
damages resulting from negligent injuries to their
minor children. *Jakubiec v Hasty,* 337 Mich 205;
59 NW2d 385 (1953); *Gumienny v Hess,* 285 Mich
411; 280 NW 809 (1938). In *Wycko v Gnodtke,* 361
Mich 331; 105 NW2d 118 (1960), these pecuniary
damages were held to include the loss of society
and companionship of a child who died from negli-
gently inflicted injuries.[6] More importantly, chil-
dren may recover for the loss of society and com-
panionship of a parent who is negligently killed
under the wrongful death act, MCL 600.2922; MSA
27A.2922. They may also recover for such loss
under the dramshop act (MCL 436.22; MSA
18.993), *Podbielski v Argyle Bowl, Inc,* 392 Mich
380, 386; 220 NW2d 397 (1974).

We are satisfied that existing judicial and legis-
lative policies warrant recognizing a child's cause
of action for loss of society and companionship of a
negligently injured parent. After carefully review-
ing the reasons cited by the defendants, we are
convinced that they do not justify denying the
cause of action the plaintiff seeks.

## III

Defendants-appellants urge several reasons for

---

[5] *Montgomery, supra.* Consortium is defined as love, companionship,
affection, society, comfort, sexual relations, services, solace and more.
*Id.,* 36. The wife's cause of action was created after judicial recogni-
tion that the wife's role in the family unit had evolved from the
status of servant to the status of equal partner. Therefore, the reasons
for denying the wife compensation at common law no longer existed
in modern society. *Id.,* 48-49.

[6] It was recognized that the concept of a minor child as a breadwin-
ner was a legal fiction in today's society. The Court indicated that the
child "has a value to others as part of a functioning social and
economic unit. This value is the value of mutual society and protec-
tion, in a word, companionship". *Wycko,* 339-340.

not recognizing a child's cause of action. The first argument is that the differences between the marital relationship and the parent-child relationship call for different treatment. They assert that a spouse's action for loss of consortium is based to a large extent on the impairment or destruction of the sexual relations of the couple and no similar element exists in the child's claim. We are not persuaded that this distinction is significant enough to deny the child's claim. Sexual relations are but one element of the spouse's consortium action. The other elements—love, companionship, affection, society, comfort, services and solace—are similar in both relationships and in each are deserving of protection.

Defendants-appellants next contend that allowing a child to maintain an independent cause of action when his or her parent is negligently injured will result in a burden to the individual defendant and to our court system. Under MCL 600.5851; MSA 27A.5851, if a person's claim accrues when he is a minor, he is entitled to bring the cause of action at any time through his 19th birthday. The prospect of multiple suits will discourage settlements.

Multiplicity of actions arising out of the same tortious act are a present reality in tort law. Multiple actions may result whenever a single tortious act injures more than one person or property owned by more than one person. Whenever the persons are minor children the tortfeasor is faced with the minority savings provision in MCL 600.5851; MSA 27A.5851.

So too when a new cause of action is created, litigation may be increased. However, as the Court of Appeals aptly pointed out, "[t]he rights of a new class of tort plaintiffs should be forthrightly judged

on their own merits, rather than engaging in gloomy speculation as to where it will all end". (Citation omitted.) 82 Mich App 199, 210.

Another objection to the child's cause of action raised by defendants-appellants is that it would be anomalous to allow a child to recover for negligent invasion of his family interest when he is specifically prohibited from recovery for intentional, direct invasion of his family interest under MCL 600.2901(1); MSA 27A.2901(1), which bars suits for alienation of affections.

We do not regard this as anomalous. One may recover for negligent injury or death of a spouse and a child may recover for the negligent death of a parent even though both be barred from recovery for the intentional, direct invasion of the family interest occasioned by alienation of affection.

We are satisfied that the real anomaly is to allow a child's recovery for the loss of a parent's society and companionship when the loss attends the parent's death but to deny such recovery when the loss attends the parent's injury.

Defendants-appellants ask us not to recognize the child's claim because of the economic burden to the public due to increased insurance premiums. Recognizing the child's cause of action may result in increased insurance costs, but compensating a child who has suffered emotional problems because of the deprivation of a parent's love and affection may provide the child with the means of adjustment to the loss. The child receives the immediate benefit of the compensation, but society will also benefit if the child is able to function without emotional handicap. This may well offset any increase in insurance premiums.

Traditional arguments for not recognizing the

child's cause of action claim that the damages to the child are too remote and speculative and that compensating the child will result in double recovery because juries already consider the child when making damage awards to the injured parent.

The Court in *Montgomery, supra,* was asked to deny the wife a cause of action because the injury suffered by the wife was too remote from defendant's act to be made the subject of a cause of action. The Court was unpersuaded by this argument and noted that the remoteness of such injury never bars the husband's cause of action. Like the *Montgomery* Court, we see no reason why the child's injury is any more remote than the injury in the spouse's cause of action. More importantly, the injury here is no more remote than the injury sustained when the parent is negligently killed.

We are not convinced that the injury to the child is too speculative to award damages. Courts, law review commentators and treatise writers all recognize that the child suffers a genuine loss.[7] While the loss of society and companionship is an intangible loss, juries often are required to calculate damages for intangible loss. Awards are made for pain and suffering, loss of society and companionship in wrongful death actions, and for loss of spousal consortium. Evaluating the child's damages is no more speculative than evaluating these other types of intangible losses.

We agree with the Court of Appeals that because double recovery could result when making

---

[7] *Borer v American Airlines, Inc,* 19 Cal 3d 441; 138 Cal Rptr 302; 563 P2d 858 (1977); *Hill v Sibley Memorial Hospital,* 108 F Supp 739 (D DC, 1952); *Hankins v Derby,* 211 NW2d 581 (Iowa, 1973); *Hoffman v Dautel,* 189 Kan 165; 368 P2d 57 (1962); *Russell v Salem Transportation Co,* 61 NJ 502; 295 A2d 862 (1972). See also Prosser, Torts (4th ed), § 125, p 896; Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent,* 56 Boston U L Rev 722, 740-741 (1976).

awards to parents, this is a further reason for adopting an independent action for the child.

"Rather than having juries make blind calculations of the child's loss in determining an award to the parent, a child's loss could be openly argued in court and the jury could be instructed to consider the child's loss separately. The award would accrue directly to the child rather than be lumped in with that of the parent who may or may not spend it for the child's benefit." (Citation omitted.) 82 Mich App 210.

Finally, defendants-appellants urge us to leave this matter to the Legislature. Actions by parents for loss of a child's services and medical expenses and actions for loss of spousal consortium were created and developed by the judiciary. At the present time, children are prevented from recovering for loss of parental consortium by judicial decision. The Court should remove the obstacle. We do not regard the cause of action contemplated here so complex that we should defer action to the Legislature.

## IV

The importance of the child to our society merits more than lip service. Convinced that we have too long treated the child as a second-class citizen or some sort of non-person, we feel constrained to remove the disability we have imposed.

We hold today that a child may recover for loss of a parent's society and companionship caused by tortious injury to the parent.

We do not adopt the Court of Appeals limitation to instances of "severely" injured parents of minor children. The need for and extent of limitations beyond those attendant upon the comparable

cause of action by a spouse should await demonstration.

Affirmed as modified.

WILLIAMS, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.

LEVIN, J. *(to reverse).* The issue is whether a child has a cause of action for loss of the society and companionship of a parent who has been negligently injured, but not fatally. Until recently, courts refused to extend the common law to allow a child to maintain such an action. One jurisdiction now allows such an action,[1] and today this Court becomes the second court of last resort to conclude that the common law should be expanded to permit a child to recover money damages for the lost society and companionship of a negligently injured parent.

We would hold with the overwhelming majority of jurisdictions which have considered or reconsidered the question—many in recent years—that such an action should not be authorized and would reverse the decision of the Court of Appeals.

I

Plaintiff Christine Berger was the wife of Wayne Berger and the mother of two children at the time a truck driven by defendant Albert Weber struck

---

[1] *Ferriter v Daniel O'Connell's Sons, Inc,* — Mass —; 413 NE2d 690 (1980). The only prior decision recognizing such an action was *Scruggs v Meredith,* 134 F Supp 868 (D Hawaii, 1955), *rev'd Meredith v Scruggs,* 244 F2d 604 (CA 9, 1957), after an intervening decision of the Hawaii Supreme Court reached the opposite result. *Halberg v Young,* 41 Hawaii 634; 59 ALR2d 445 (1957). Other decisions rejecting the claim that a child has a cause of action for loss of parental society and companionship are listed in fn 64, *infra.*

her automobile from behind.[2] She suffered no visible injuries as a result of the accident, but she subsequently experienced neck pain, severe headaches and a number of emotional problems. She was treated with medication and physical therapy and was hospitalized for a time.

Christine and Wayne Berger commenced an action seeking damages for Christine's medical expenses, loss of income, and pain and suffering, and Wayne's loss of consortium. The complaint was subsequently amended to allege a cause of action on behalf of the Bergers' minor daughter, Denise,[3] for loss of her mother's society, companionship, love and affection resulting from Christine's injuries.[4] Christine sought judgment in the amount of $750,000 and Wayne and Denise $500,000 each.

The judge, granting defendants' motion for partial summary judgment, dismissed the claim asserted on behalf of Denise. Defendants admitted liability and the question of damages was tried to a jury. Defendants contended that Christine had suffered no more than a neck sprain in the accident and that her subsequent difficulties were caused solely by pre-existing emotional problems.

[2] The truck was owned by defendant Becker Leasing Company, Inc., and was being driven by Weber in the course of his employment with defendant Star of the West Milling Company. The accident occurred on March 13, 1973, before the effective date of the no-fault motor vehicle liability act.

[3] Denise Berger was born on October 2, 1966. According to plaintiffs' opening statement at trial, Denise began to have seizures when she was six weeks old. It soon became evident that her mental development would be severely limited and doctors advised the Bergers to institutionalize her. Instead, they chose to care for her at home although she continued to require the attention given an infant.

Denise died on July 16, 1977.

[4] It appears that the problems Christine Berger experienced after the automobile accident adversely affected the quantity and quality of parental care she provided Denise. No claim has been filed on behalf of the Bergers' other child, Paul, who was a normal 11-year-old at the time of trial.

The jury assessed Christine's damages at $137,-000 and Wayne's at $5,000. The Court of Appeals rejected defendants' allegation of instructional error and, on plaintiffs' cross-appeal, reversed the grant of summary judgment on Denise's claim, holding that "a child may maintain a cause of action for loss of parental society and companionship *when a parent is 'severely' injured*".[5] (Emphasis supplied.) We granted leave to appeal to consider whether such a cause of action should be recognized.[6] In affirming the Court of Appeals, this Court says:

"We do not adopt the Court of Appeals limitation to instances of 'severely' injured parents of minor children. The need for and extent of limitations beyond those attendant upon the comparable cause of action by a spouse should await demonstration."[7]

## II

At common law a husband whose wife had been injured could bring a separate action to recover for his loss of consortium resulting from her injury. Consortium was a loosely defined concept comprised of the husband's rights to "services, society and sexual intercourse of the wife".[8] A father could maintain an action for loss of an injured

---

[5] *Berger v Weber*, 82 Mich App 199, 201; 267 NW2d 124 (1978).

[6] 403 Mich 846 (1979).

[7] *Ante,* p 17.

[8] Prosser, Torts (4th ed), § 124, p 874. On the meaning of consortium see, generally, 1 Harper & James, Law of Torts, § 8.9, pp 635-643; Holbrook, *The Change in the Meaning of Consortium,* 22 Mich L Rev 1 (1923); Lippman, *The Breakdown of Consortium,* 30 Colum L Rev 651 (1930).

In *Montgomery v Stephan*, 359 Mich 33, 35-36, 43-44; 101 NW2d 227 (1960), this Court criticized efforts to separate consortium into "material" and "sentimental" aspects and treated it as an indivisible concept.

child's services.[9] But a wife or child could not recover if deprived of a husband's or father's services or society, for the common law recognized no right to such services or society in the "inferior" parties to the relationship.[10]

In most jurisdictions the common law has been altered to permit a wife to recover for loss of consortium. This case presents the question whether a child should be permitted to bring a comparable action.

The advocates of a child's action for loss of what has been termed "parental consortium" maintain that recognition of the child's right to recover is mandated by logic, compassion, and modern sensitivity to the independent identity of the child, the importance of family relationships, and the fairness of compensating persons injured by another's negligent conduct. They point to this Court's eloquent vindication of the wife's action for loss of

[9] Prosser, *supra,* § 125, p 888, fn 38.

[10] "We may observe that, in these relative injuries, notice is only taken of the wrong done to the superior of the parties related, by the breach and dissolution of either the relation itself, or at least the advantages accruing therefrom; while the loss of the inferior by such injuries is totally unregarded. One reason for which may be this: that the inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; and therefore the inferior can suffer no loss or injury. The wife cannot recover damages for beating her husband, for she hath no separate interest in any thing during her coverture. The child hath no property in his father or guardian; as they have in him, for the sake of giving him education and nurture. Yet the wife or the child, if the husband or parent be slain, have a peculiar species of criminal prosecution allowed them, in the nature of a civil satisfaction; which is called an *appeal* [italics in original], and which will be considered in the next book. And so the servant, whose master is disabled, does not thereby lose his maintenance or wages. He had no property in his master; and, if he receives his part of the stipulated contract, he suffers no injury, and is therefore intitled *[sic]* to no action, for any battery or imprisonment which such master may happen to endure." 3 Blackstone, Commentaries (1st ed), pp 142-143.

See, also, Prosser, *supra,* § 124, pp 881, 887; § 125, p 894; Note, *Judicial Treatment of Negligent Invasion of Consortium,* 61 Colum L Rev 1341, 1344, 1346 (1961).

consortium[11] and to the wrongful death act, which enables a child to recover for loss of the society and companionship of a deceased parent in a wrongful death action,[12] and assert that justice, public policy, and the Equal Protection Clause require that a child also be allowed to recover for loss of a parent's society and companionship.

The opponents of the proposed cause of action argue that it will (1) spawn multiple lawsuits arising out of the same injury, with consequent multiplication of awards; (2) discourage settlement of parents' claims since the claims of minor children cannot thereby be extinguished; (3) encourage double recovery since juries already take the loss suffered by the injured person's family into account in computing damages; (4) lead to further extensions of tort liability as plaintiffs with other relationships to the injured person seek recognition of their losses; and (5) impose upon the public the unwarranted economic burden of increased insurance premiums to fund insurers' costs in paying and litigating such claims. They also contend (6) that the child's damages are speculative, remote, and not susceptible of monetary compensation; (7) that the child-parent relationship is distinguishable from the marital relationship; and (8) that the Legislature is in the best position to determine whether the new cause of action should be instituted and what limits should be placed upon it.

The Court, building on judicial recognition of causes of action for loss of spousal consortium and for parental loss of a child's services and other pecuniary damages, and on statutes permitting a child to recover for loss of the society and compan-

---

[11] *Montgomery v Stephan, supra.*

[12] MCL 600.2922(2); MSA 27A.2922(2).

ionship of a deceased parent or where such loss is occasioned by violation of the dramshop act, states that it is "satisfied that existing judicial and legislative policies warrant recognizing a child's cause of action for loss of society and companionship of a negligently injured parent". It proceeds to examine some of the arguments advanced by the defendants, rejecting them primarily because analogous causes of action are allowed to be maintained despite similar arguments. It finds it anomalous that a child can recover under the wrongful death act for loss of a deceased parent's society and companionship and that the courts have failed to supplement that act by allowing a child to maintain a common-law action for such loss where the parent survives the injury. It states the child has been treated as a "second-class citizen or some sort of non-person".[13] In contrast with its approach in examining the arguments of the defendants, it does not scrutinize the arguments of proponents of the cause of action and fails to subject them to critical analysis.

## III

### A

This Court has observed that "[t]he law of negligence was created by common-law judges and, therefore, it is unavoidably the Court's responsibility to continue to develop or limit the development of that body of law *absent* legislative directive".[14] (Emphasis in original.) The bounds of recovery, no less than the conditions of liability, are judicially drawn and subject to judicial alteration.

Decisions delineating the extent of tort liability

---

[13] *Ante,* p 17.

[14] *Moning v Alfono,* 400 Mich 425, 436; 254 NW2d 759 (1977).

are, however, more than exercises in logic. They are pronouncements of social policy which should reflect the often subtle balance of the interests involved.[15] The Supreme Court of New Jersey observed:

"[L]ogic (and even abstract justice) must defer to overall policy in the appraisal of the justification for judicial changes in the common law."[16]

Twenty years ago this Court concluded that a wife's interest in compensation for the loss of her injured husband's society and companionship outweighed a negligent defendant's interest in freedom from liability for such loss, although his "liabilities as a result of his negligent act must have some reasonable limitation".[17] Today we balance the interest of an injured person's child in monetary redress for injury to the parent-child relationship against the consequences of imposing yet another potential liability upon a negligent defendant—a liability the additional cost of which will be spread among the citizens of the state through increased insurance premiums. In responding, it is not enough to invoke analogies. An independent re-examination of the policy considerations implicated by the creation of such a separate cause of action is called for.

B

The action for loss of consortium is an historical curiosity. It originated at a time when a husband

[15] Prosser, *supra*, §§ 3-4, pp 14-23. See, also, *Montgomery v Stephan, supra,* p 46. Cf. *Moning v Alfono, supra,* pp 453-459.

[16] *Russell v Salem Transportation Co,* 61 NJ 502, 506; 295 A2d 862 (1972).

[17] *Montgomery v Stephan, supra,* p 46.

was considered to possess a proprietary right in his wife's services, and conduct of a third person which impaired her ability to render services was regarded as causing him pecuniary loss.[18] The earliest English cases upholding a husband's right to bring an action for injury to himself resulting from wrongful conduct in respect to his wife involved intentional torts. The complaint alleged, for example, that the defendant had committed an assault and battery upon the wife,[19] or had abducted her.[20] The courts analogized the husband's loss of his wife's "company" to the master's loss of the services of a battered servant.[21]

Recognition of the husband's loss of consortium as an element of damages accompanied the evolution of a variety of actions for intentional interference with the marriage relationship: enticement or harboring (inducing a wife to live apart from her husband); criminal conversation (adultery); alienation of affections.[22]

The question before us emanates from yet another line of cases where the courts, without apparent recognition that they were significantly extending the common law, permitted husbands to recover for loss of consortium resulting from negligently inflicted injury as well as from intentional

[18] On the early history of the husband's action for loss of consortium, see Popescul, *Action Per Quod Consortium Amisit,* 43 Sask L Rev 27, 28-33 (1979).

[19] *Chomley v Conge,* 4 Leon 88; 74 Eng Rep 748 (1586); *Guy v Livesey,* Cro Jac 501; 79 Eng Rep 428 (1618); *Young v Pridd,* Cro Car 89; 79 Eng Rep 679 (1627). Because she had no separate legal existence during coverture, the wife could sue for her injuries only if her husband joined in the action. 1 Blackstone, Commentaries (1st ed), p 431; 3 *id.,* p 140.

[20] *Hyde v Scyssor,* Cro Jac 538; 79 Eng Rep 462 (1619); *Young v Pridd, supra.*

[21] *Guy v Livesey, supra; Hyde v Scyssor, supra.*

[22] See 3 Blackstone, *supra,* p 139; Prosser, *supra,* § 124, pp 874-876; Popescul, *supra,* pp 30-31.

injury.[23] And, beginning in 1950, a series of American courts extended to wives the right to recover from a negligent tortfeasor for loss of spousal consortium.[24] The first step having been taken, the second logically followed, although equality between husband and wife could as well have been achieved by abolishing the husband's action as by recognizing the wife's.[25]

The soundness of the first step has been questioned,[26] and we should not proceed further along the same path merely because to do so would appear to be logical. Confronted with the question whether a wife should be permitted to recover for loss of consortium, Lord Chief Justice Goddard said:

---

[23] See, *e.g., Stone v Jackson,* 16 CB 199; 139 Eng Rep 732 (1855); *Brockbank v Whitehaven J R Co,* 7 H & N 835; 158 Eng Rep 706 (1862); *McKinney v Western Stage Co,* 4 Iowa 420 (1857); *Hopkins v Atlantic & St L R Co,* 36 NH 9 (1857). This development was an outgrowth of the practice of allowing actions for loss of a servant's services or a wife's consortium to be brought either in trespass or upon the case. See *Chamberlain v Hazelwood,* 5 M & W 515; 151 Eng Rep 218 (1839); Popescul, *supra,* p 31. The action on the case was the forerunner of the modern negligence action, and the significance of negligence as a distinct theoretical basis of liability was only beginning to be recognized at this time. Prosser, *supra,* § 28, p 140.

[24] The first case to take this step was *Hitaffer v Argonne Co,* 87 US App DC 57; 183 F2d 811 (1950). Subsequent cases are listed in Love, *Tortious Interference With the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship,* 51 Ind L J 590, 596, fn 20 (1976). *Whittlesey v Miller,* 572 SW2d 665, 668, fn 6 (Tex, 1978), lists nine states as not yet recognizing the wife's action. Four of those states have since adopted the majority rule. *Hopson v St Mary's Hospital,* 176 Conn 485; 408 A2d 260 (1979); Kan Stat Ann § 23-205 (1980 Cum Supp), *Nicholson v, Hugh Chatham Memorial Hospital, Inc,* 300 NC 295; 266 SE2d 818 (1980); *Lundgren v Whitney's, Inc,* 94 Wash 2d 91; 614 P2d 1272 (1980).

[25] A number of courts, including this one, had at one time concluded that abolition of the husband's action was required by the enactment of statutes recognizing the separate legal existence of married women. See *Blair v Seitner Dry Goods Co,* 184 Mich 304, 313-314; 151 NW 724 (1915), overruled by *Montgomery v Stephan, supra.*

[26] Jaffe, *Damages for Personal Injury: The Impact of Insurance,* 18 Law & Contemporary Problems 219, 229 (1953); *Neuberg v Bobowicz,* 401 Pa 146; 162 A2d 662 (1960).

"[I]f the matter were now res integra the law, * * * I am tempted to say 'certainly,' would refuse to give an action to the husband merely for loss of consortium due to *negligence*. It is too late now for the courts to deny an action which has existed for hundreds of years. It is an anomaly at the present day that a husband can obtain damages for an injury to his wife, but *English law is free neither of some anomalies nor of everything illogical, but this is no reason for extending them.*" (Emphasis supplied.)[27]

In a negligence action the plaintiff is almost always a person who alleges personal injury or property damage caused by the defendant's breach of a duty of care. In contrast, a family member who seeks compensation for loss of consortium seeks to recover in respect to physical injury to another.

The jurisprudential concepts of duty and proximate cause, reserved for judicial determination, serve to limit the scope of a defendant's liability for negligence.

It has been said that "[d]uty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person".[28] What relationship, then, obligates an actor with respect to the interests of a member of an injured person's family so as to create a duty to that person?

---

[27] *Best v Samuel Fox & Co,* [1952] AC 716, 733.

Lord Porter agreed and said:

"If the change is to be made I should prefer to abolish the husband's right rather than to grant the like remedy to the wife." *Id.,* p 728.

See, also, *id.,* p 735 (opinion of Lord Morton of Henryton).

We do not wish to be understood as endorsing abolition of a spouse's action for loss of consortium, which is perhaps too firmly entrenched to be disturbed. That the common law developed an aberration is not, however, a reason for its continued expansion.

[28] *Moning v Alfono, supra,* pp 438-439.

While that inquiry was overlooked when the action for loss of consortium became associated with actions for negligent injury to a wife as well as with actions for intentional interference with the marriage relationship, it was much on the minds of the English Lords who refused to permit a wife to bring an action for loss of consortium caused by negligence. The Lords described the husband's action as "an anomaly" "founded on the proprietary right which from ancient times it was considered the husband had in his wife",[29] and remarked upon its inconsistency with general principles regarding the scope of a defendant's liability for the consequences of his negligent actions.

A court's resolution of the questions of duty and proximate cause "depend[s] in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable".[30]

Plaintiffs assert that it is manifestly foreseeable that serious physical injury caused by a tortfeasor's negligence will be accompanied by loss to the victim's immediate family of the society and companionship of the injured person. It is argued that since this Court has, at least implicitly, determined that a wife's or husband's loss is not so remote that it is beyond the ambit of proximate cause and that breach of a duty owed the victim will be deemed a breach of a duty to the victim's spouse, the loss suffered by the victim's children must likewise fall within the sphere of liability.

Foreseeability is not, however, the only criterion

---

[29] *Best v Samuel Fox & Co, supra,* pp 733, 731 (opinion of Goddard, L.C.J.).

[30] *Moning v Alfono, supra,* p 439.

for measuring the limits of liability for negligent conduct. It is foreseeable that any injured person will be party to a number of relationships—with the members of his household (who may not form a traditional nuclear family), with relatives, with friends and neighbors, with employer, employees, or co-workers—and that the other party to the relationship will suffer losses, tangible and intangible, should the relationship be interrupted. Lord Goddard observed:

"It may often happen that an injury to one person may affect another; a servant whose master is killed or permanently injured may lose his employment, it may be of long standing, and the misfortune may come when he is of an age when it would be very difficult for him to obtain other work, but no one would suggest that he thereby acquires a right of action against the wrongdoer."[31]

Even if it is accepted that policy considerations weigh more heavily in favor of recovery where family relationships regarded as fundamental to society are implicated, the anomalous character of the common-law action for loss of consortium[32] should deter us from extending it beyond the marital relationship, "the closest entity recognized by society",[33] to other relationships. There may be appealing analogies between the relationships of husband and wife and parent and child, but "[r]ea-

---

[31] *Best v Samuel Fox & Co, supra,* p 731.

[32] We do not suggest that further extension of the right to recover for loss of consortium should be denied because consortium originated as a property interest. We so conclude, rather, because policy considerations dictate that the circumstances under which one can recover in respect to injury to another should be extremely limited.

[33] *Albert v McGrath,* 107 US App DC 336, 338; 278 F2d 16, 18 (1960).

soning from one analogy to another can carry one into infinity".[34]

In refusing to recognize a child's action for loss of parental consortium, a California Court of Appeal said:

"Plaintiff's claim, viewed in the abstract and divorced from its surroundings, carries both logical and sympathetic appeal. * * *

"Nevertheless, our decision must take into account considerations in addition to logical symmetry and sympathetic appeal. As pointed out by Judge Breitel, every injury has ramifying consequences and losses, like the rippling of the waters, without end.[35] * * * [N]ot every loss can be made compensable in money damages, and legal causation must terminate somewhere. In delineating the extent of a tortfeasor's responsibility for damages * * *, the courts must locate the line between liability and non-liability at some point, a decision which is essentially political."[36]

The Court does not indicate that it is prepared to draw a line somewhere or anywhere and indeed quotes with approval a statement of the Court of Appeals that " '[t]he rights of a new class of tort plaintiffs should be forthrightly judged on their own merits, rather than engaging in gloomy speculation as to where it will all end,' "[37]—as if the merits of plaintiff's claim can be resolved in the

---

[34] *Production Steel Strip Corp v Detroit,* 390 Mich 508, 537; 213 NW2d 419 (1973) (opinion of LEVIN, J.).

[35] " 'While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.' *Tobin v Grossman,* 24 NY2d 609, 619; 301 NYS2d 554, 561; 249 NE2d 419, 424 (1969)." *Suter v Leonard,* 45 Cal App 3d 744, 746, fn 1; 120 Cal Rptr 110, 111, fn 1 (1975).

[36] *Suter v Leonard, supra.*

[37] *Ante,* p 14.

abstract, focusing solely on the justness and fairness from the child's point of view of recognizing a right of recovery in this sympathetic case without regard to countervailing policy considerations and thoughtful consideration of "where it will all end".

The Court's decision does not in terms limit its holding to the creation of a cause of action for *minor* children who lose the society and companionship of an injured parent. Parents often continue to provide their children with society, companionship, nurturance and guidance long after the children themselves become parents. Some children never leave their parents' homes. Other children, whether married or single, become the devoted caretakers and companions of aged parents, whose society and companionship play a prominent role in their lives. The class of cases in which deprivation of parental consortium can be asserted is more extensive than might at first appear.

And now that we recognize a child's cause of action for loss of the society and companionship of a negligently injured parent, will we not also be called upon to compensate a parent's corresponding loss when a child is injured?[38]

The Court's analogy to the wrongful death act

[38] Compare *Baxter v Superior Court of Los Angeles County*, 19 Cal 3d 461; 138 Cal Rptr 315; 563 P2d 871 (1977) (denying recovery), with *Shockley v Prier*, 66 Wis 2d 394; 225 NW2d 495 (1975) (permitting recovery). At present, Michigan law recognizes a distinct cause of action in favor of the parents of a wrongfully injured child, but recovery is limited to the parents' loss of services and expenses incurred. *Gumienny v Hess*, 285 Mich 411; 280 NW 809 (1938). Compare *Bias v Ausbury*, 369 Mich 378, 380; 120 NW2d 233 (1963) (Ohio law).

The Court alludes in this regard to *Wycko v Gnodtke*, 361 Mich 331; 105 NW2d 118 (1960), but as it acknowledges, that case concerned the measurement of the "pecuniary loss" recoverable under the wrongful death act by the parents of a deceased minor child, not the damages recoverable by the parents of a child who survives negligently inflicted injury.

suggests that a like analogy may be drawn in future cases where a sibling or other member of "that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate",[39] and who would therefore be permitted to recover under the wrongful death act if an injured person dies, seeks to recover for loss of the society and companionship of an injured person who survives. Distinctions between the parent-child relationship and other relationships can indeed be made, but the Court's analysis, which minimizes the distinctions that could be drawn in the instant case, holds little promise for drawing such distinctions in other cases. Moreover, the "elements—love, companionship, affection, society, comfort, services and solace—"[40] which the Court identifies as similar in the marital and parent-child relationships are also present in other rela-

---

[39] MCL 600.2922(2); MSA 27A.2922(2).

Where a deceased person is not survived by a spouse or children, "next of kin" who are potential heirs-at-law may recover under the wrongful death act for loss of society and companionship. To that extent, the common law might be thought to be "anomalous" if it does not countenance a cause of action for such loss if the injured relative survives. Furthermore, this Court is presently considering whether the brothers and sisters of a deceased person who was survived by a spouse and both parents may recover for loss of society and companionship. *Crystal v Hubbard,* 92 Mich App 240; 285 NW2d 66 (1979), *lv granted* 408 Mich 895 (1980), construed the act as excluding siblings from the "next of kin" entitled to recover under those circumstances. But in *Scott v Burger King Corp,* 95 Mich App 694, 703; 291 NW2d 174 (1980), another panel of the Court of Appeals held that any family member who could potentially (as distinguished from would actually) inherit the deceased's personal property in case of intestacy might recover for loss of society, companionship and support.

Should this Court decide that brothers and sisters or other potential heirs are entitled to such recovery, irrespective of whether a closer blood relative also survives, will it not be once again "anomalous" to deny recovery for loss of society and companionship where the sibling or relative survives the injury?

[40] *Ante,* p 14.

tionships: brothers and sisters, a child and a grandparent, or a cohabiting unmarried couple.[41]

The concept of allowing a person to recover for consequential loss resulting from physical injury to another is an idiosyncracy in the law. Reasonable limits on liability for the consequences of negligent acts must be imposed. Upon review of the policy considerations we conclude that they do not favor redrawing the line between liability and non-liability to create a separate cause of action for loss of parental consortium.

## IV

In concluding that the balance between the child's interest in compensation for the lost society and companionship of an injured parent and the tortfeasor's interest in freedom from additional liability, with due consideration to the social consequences of each alternative, weighs against recognition of the child's claim, we are influenced by a number of considerations including the uncertainty that recognizing the proposed cause of action will yield a significant social benefit, the additional economic burden imposed upon the general public by expanding recovery to a new category of indirect injury likely to be associated with a large percentage of accidents, the nature of the loss asserted, the lack of immediate connection between the plaintiff and the defendant, and the

---

[41] Loss of society and companionship may not be thought to be significant where the relationship can be characterized as a short-lived "affair". But today some couples, for whatever reasons, continue relationships for many years, perhaps until death do them part. Nor is this a phenomenon observed only among the young; it has been observed that such relationships are increasingly frequent among the elderly, who may seek to form quasi-marital relationships following the death of a spouse.

difficulty of objective demonstration and evaluation of the child's injury.

One leading commentator has suggested that the interests protected by tort law may be classified into "interests of personality", "property interests", and "relational interests".[42] Loss of consortium is a harm to a relational interest which occurs when the other party to the relationship suffers physical harm (invasion of an interest of personality). Because loss of consortium is not an injury to the person who bore the direct impact of the defendant's negligence but to another person whose relationship to the primary victim is diminished as a consequence, it may be regarded as a secondary layer of tort liability superimposed upon the defendant's liability to the primary victim.[43] There are few other instances where a *secondary* tort victim has been permitted to recover for a *negligently* inflicted injury to a *relational* interest unaccompanied by physical injury to himself.[44]

It is preferable to minimize the number of actions which can be brought for damages arising out of a single tortious act. The wisdom of creating a new cause of action depends in part upon whether other legal avenues are adequate to redress part or all of the asserted loss. Despite the increased acceptance of the spouse's action for loss of consortium, the extension of tort recovery be-

---

[42] Green, *Relational Interests,* 29 Ill L Rev 460 (1934).

[43] *Cf. Adams v Southern Pacific Transportation Co,* 50 Cal App 3d 37, 43; 123 Cal Rptr 216, 219 (1975), speaking of "secondary victims" who have "no direct spatial or legal relationship with the alleged wrongdoer".

[44] A possible exception is recovery for loss of the deceased's society and companionship in a wrongful death action, but the absence of the primary victim renders the wrongful death action a special case. See Part V-B. Another possible exception is an action for mental suffering, absent physical injury, occasioned by witnessing the negligent infliction of injuries on one's child. *Toms v McConnell,* 45 Mich App 647; 207 NW2d 140 (1973).

yond the primary victim remains the exceptional case. To the extent that a secondary tort victim's loss is likely to be duplicated in the primary victim's recovery, courts should be wary of creating additional claims deriving from the same tortious act, particularly where all injuries are localized within the same family unit.

Today the victim of a personal injury can recover for a broad variety of intangible losses in addition to conventional "pain and suffering". Without intimating a view as to the accuracy of their conclusions, we note that two federal courts,[45] a student commentator,[46] and a practitioner[47] agree that "loss of life's enjoyments constitutes an element of compensable damages under the law of [Michigan]".[48] One court observed that the plaintiff's social and recreational activities centered on his family, with whom he shared "dancing, ice skating, walking through the nearby woods or the Lake Michigan shore, family picnics, mushroom hunting, and shopping".[49] That analysis demonstrates that loss of the enjoyment of life may include curtailment of shared family activities;

[45] Gowdy v United States, 271 F Supp 733 (WD Mich, 1967); Pierce v New York C R Co, 409 F2d 1392 (CA 6, 1969).

[46] Comment, Loss of Enjoyment of Life—Should It Be a Compensable Element of Personal Injury Damages?, 11 Wake Forest L Rev 459, 467 (1975).

[47] An outline of the elements of damages recoverable in bodily injury cases includes "[i]mpaired enjoyment of life" as one of 16 specific subheadings. Michigan Law of Damages (Wade ed, Ann Arbor: Institute of Continuing Legal Education), p 10-8.

[48] Pierce v New York C R Co, supra, p 1398, citing Remey v Detroit U R Co, 141 Mich 116; 104 NW 420 (1905) (postponement of marriage), Cawood v Earl Paige & Co, 239 Mich 485, 490; 214 NW 402 (1927) (Court observed that plaintiff "will no longer be permitted to enjoy many of the things in life which it may well be said 'make life worth living' "); Tabor v Carey & Leach Bus Lines, 242 Mich 9; 217 NW 792 (1928) (aspiring musician surrendered his ambition to play in orchestra following injury to his arm).

[49] Gowdy v United States, supra, p 750.

moreover, the pangs of separation from family
during hospitalization may be taken into account
as a part of the injured person's mental suffering.
In fact, if not in form, juries today may compen-
sate personal injury plaintiffs for the overall re-
duction in the quality of family life, including the
impairment of family relationships.

When a close link between two persons is dis-
rupted, it is difficult to distinguish the injury
suffered by each. As the California Supreme Court
noted: "[T]o ask the jury, even under carefully
drafted instructions, to distinguish the loss to the
mother from her inability to care for her children
from the loss to the children from the mother's
inability to care for them may be asking too
much."[50] To permit a child to recover for loss of an
injured parent's society and companionship while
the parent is also compensated for injury to the
relationship creates a substantial risk of double
recovery because of the difficulty of distinguishing
the respective losses of the parties.

As the Supreme Court of New Jersey observed,

"The asserted social need for the disputed cause of
action may well be qualified, at least in terms of the
family as an economic unit, by the practical considera-
tion * * * that reflection of the consequential disadvan-
tages to children of injured parents is frequently found
in jury awards to the parents on their own claims
under existing law and practice."[51]

Moreover, where the primary victim recovers for
his own injuries, the most direct consequences of
the accident are compensated and the party at
fault does not escape liability. Fundamental objec-

[50] *Borer v American Airlines, Inc,* 19 Cal 3d 441, 448; 138 Cal Rptr
302, 307; 563 P2d 858 (1977).
[51] *Russell v Salem Transportation Co, supra,* p 507.

tives of tort law—compensation of innocent par-
ties, allocation of loss to responsible parties (or
broader distribution of loss if the tortfeasor is
insured), and deterrence of negligent conduct—are
all served in some measure and will not be viti-
ated if the defendant's liability is not extended
further.

Courts have sometimes cited the uncertainty of
the damages which would be recovered in an
action for loss of parental society and companion-
ship as a reason for refusing to recognize the
action.[52] A common but inadequate rejoinder is
that other elements of tort damages, notably pain
and suffering, are equally uncertain.[53]

Courts have generally been willing to tolerate
substantial uncertainty in the calculation of dam-
ages where such was thought necessary to enable
the primary tort victim to receive adequate com-
pensation. That bodily pain and mental anguish
defy objective valuation and that money is a poor
palliative seem inadequate justifications for deny-
ing a victim who has been crippled or disfigured a
monetary remedy. In the context of actions not
brought by the primary victim, however, objections
to the uncertainty of the intangible loss alleged
and to the inherent inadequacy of money damages
as compensation loom larger, especially since the
primary victim may also recover a sum for intan-
gible, uncertain injuries. Considerations which
would not deter a court from compensating a
primary victim may thus, notwithstanding the
anomaly of recovery for spousal consortium, sup-

[52] *E.g., Russell v Salem Transportation Co, Inc, supra,* p 507; *Duhan
v Milanowski,* 75 Misc 2d 1078, 1083; 348 NYS2d 696, 702 (1973).

[53] Note, *The Child's Right to Sue for Loss of a Parent's Love, Care
and Companionship Caused by Tortious Injury to the Parent,* 56
Boston U L Rev 722, 734 (1976); *Borer v American Airlines, Inc,
supra,* pp 454-455 (Mosk, J., dissenting).

port a refusal further to expand the scope of liability.

Denise Berger's misfortune highlights the difficulties that juries will encounter in valuing loss of parental society and companionship and that courts will face when asked to review jury verdicts. On the one hand, Denise was uniquely dependent on others and her mother necessarily played an overwhelmingly important role in her life; on the other hand, her cognitive faculties—and perhaps her ability to experience loss of her mother's society and companionship—were severely impaired and the range of activities she could share with her mother was drastically limited. Is her loss greater or less than a normal child's? What significance should be attached to the ability of other family members, *e.g.,* her father and brother, to care for her?

In contrast to the intangibility of the alleged injury and the difficulty of appraising it stands the certainty that creating a new basis for recovery will impose an added economic burden upon society. The California Supreme Court observed, "since virtually every serious injury to a parent would engender a claim for loss of consortium on behalf of each of his or her children, the expense of settling or litigating such claims would be sizable".[54] The Supreme Court of New Jersey perceptively described the problem:

"If the claim were allowed there would be a substantial accretion of liability against the tortfeasor arising out of a single transaction (typically the negligent operation of an automobile). Whereas the assertion of a spouse's demand for loss of consortium involves the joining of only a single companion claim in the action with that of the injured person, the right here debated

[54] *Id.,* p 447.

would entail adding as many companion claims as the injured parent had minor children, each such claim entitled to separate appraisal and award. The defendant's burden would be further enlarged if the claims were founded upon injuries to both parents. Magnification of damage awards to a single family derived from a single accident might well become a serious problem to a particular defendant as well as in terms of the total cost of such enhanced awards to the insured community as a whole."[55]

While the creation of other new causes of action may have affected only a handful of cases and thus generated marginal additional costs,[56] recognizing a separate right of recovery in members of a tort victim's family creates a potential for additional liability in a large number of cases.[57] And a tort victim is likely to have more children than spouses.

The cost of this innovation in the law will be exacerbated if recognition of the cause of action is not limited to cases where, as alleged here, the parent is "severely" injured or disabled for an extended period—the Court eschews such a limitation. Absent some such limitation, claims could be lodged by children whose parent had been hospitalized for a period of months, perhaps even weeks, after an accident, or had been rendered

---

[55] *Russell v Salem Transportation Co, supra*, p 506.

[56] *E.g.*, actions for "wrongful birth" or emotional distress at witnessing negligent infliction of injury on a family member.

[57] Belli & Wilkinson in *Loss of Consortium: Academic Addendum or Substantial Right?*, 16 Trial (No. 2) 20 (February, 1980), suggest that "presently it may well be *malpractice* for an attorney to fail to become informed as to the marital status of a client and not advise the non-injured spouse of his or her *loss of consortium* rights". (Emphasis in original.) Now that a child's action for loss of consortium has been recognized, an attorney might be equally obligated to advise the children of an injured parent (or perhaps the parent and spouse) of their right to maintain an action for loss of consortium, with the consequence that many would accept the implicit invitation to advance the claim.

physically incapable of participating in some formerly shared activities. Such claims might outnumber the more substantial ones and exceed them in aggregate dollar amount as well. The administrative expense of reviewing children's claims and the cost of settling or litigating them will be considerable and will require significant increases in insurance premiums.

The Court acknowledges that insurance costs may rise, but suggests that an offsetting benefit for "any" increase may be realized:

"[C]ompensating a child who has suffered emotional problems because of the deprivation of a parent's love and affection may provide the child with the means of adjustment to the loss. The child receives the immediate benefit of the compensation, but society will also benefit if the child is able to function without emotional handicap. This may well offset any increase in insurance premiums."[58]

It is doubtful that recognizing a child's cause of action will produce such auspicious results. Because few automobile drivers carry adequate liability insurance, most children who are deprived of a parent's companionship will not be benefitted. Policy limits are likely to be exhausted in the full or partial satisfaction of the injured parent's claim and the spouse's loss of consortium claim, without regard to children's claims for loss of parental consortium. Even fewer drivers have sufficient resources to satisfy such claims themselves. To be sure, some fortunate plaintiffs—for example, a child whose parent happens to be injured in a collision with a common carrier's truck instead of an ordinary citizen's automobile, or in an indus-

[58] *Ante*, p 15.

trial accident where a third party is responsible, or by a major manufacturer's product—will be able to recover against "deep-pocket" defendants. But in the typical auto accident case, the less serious the parent's injury, the more likely it is that money will be available to pay claims for loss of parental consortium. The benefits of recognizing the child's cause of action will be unevenly and adventitiously distributed, more so than ordinarily.[59]

There is a limit to the range of injuries and the dollar amount of recovery which can be spread across society through the interaction of the tort litigation and insurance systems. Increasing the load on the reparation system by recognizing causes of action in secondary tort victims in addition to the primary victim's action must increase insurance premiums, decrease participation in the system by marginal insureds, and perhaps decrease the amount that an insurer will willingly pay to the primary victim, thereby increasing litigation.

The proposed cause of action might seem less objectionable if its costs and benefits could be forecast more definitely. We cannot predict that the sums distributed to children whose parents are themselves entitled to compensation for injury will

[59] A court does not ordinarily concern itself with the collectibility of a judgment in deciding whether liability should be imposed upon a wrongdoer. The nature of the tort reparation system is such that some injured persons obtain judgments and some do not, and some judgments are collectible while others are not. But in deciding the policy question whether to recognize a new cause of action imposing additional liability in circumstances where liability to closely related plaintiffs already exists, it is appropriate to consider whether permitting such recovery will generally provide a remedy for otherwise uncompensated injury, or whether only a handful of those on whose behalf the cause of action is claimed will realize the additional benefit. Automobile accidents are the predominant cause of serious injury in our society, and it is unlikely that the average motorist will increase his automobile insurance coverage in response to today's decision.

produce a distinct social benefit in more than a handful of cases.[60]

The Court suggests that allowing the child to recover "may provide the child with the means of adjustment to the loss".[61] But it is problematic whether the means of adjustment can be purchased with money, whether awards will be so applied, or whether compensation will be received before the passage of time or the parent's recovery has worked a better adjustment. More accurate than a vision of minor children restored to emotional health by the services of parent substitutes and mental health professionals is the scenario depicted by the California Supreme Court:

"[M]onetary compensation will not enable plaintiffs to regain the companionship and guidance of a mother; it will simply establish a fund so that upon reaching adulthood, when plaintiffs will be less in need of maternal guidance, they will be unusually wealthy men and women."[62]

The California Supreme Court observed that, where recognition is sought for "a wholly new

[60] *Borer v American Airlines, Inc, supra,* p 447.

[61] *Ante,* p 15.

[62] One court has suggested that allowing minor children to recover separately may cause family discord:

"Whether or not, under the proposed added cause of action, the aggregate damages awarded the family by a jury for the injured parent, the spouse and the minor children would generally exceed substantially total family awards under existing law and practice, as anticipated above, one can question the desirability in social policy of the expectable result of actions including the proposed cause of action whereby a portion of the total family recovery, be such recovery large or small, would be segregated and made unavailable for control and disposition by the parents as managers of the family finances. There might also arise the cognate possibility of conflicts within the family in relation to settlements over apportionment of any lump sum tendered by the defense as between the injured parent, the spouse and each of the children." *Russell v Salem Transportation Co, supra,* p 507.

cause of action, unsupported by statute or precedent", "the inadequacy of monetary damages to make whole the loss suffered, considered in light of the social cost of paying such awards", and of the uncertainty that paying them will produce any social benefit, "constitutes a strong reason for refusing to recognize the asserted claim".[63]

It is significant that, although Federal and state courts in approximately 20 jurisdictions have considered the question presented in this case, only one other jurisdiction recognizes a child's right of action for loss of parental society and companionship.[64] While many of the decisions withholding recognition relied upon the lack of common-law precedent, deferred to the legislature, or employed arguments which failed to make an explicit policy judgment, such substantial unanimity of result, even among courts not noted for their timidity in the development of tort law,[65] evidences some con-

---

[63] *Borer v American Airlines, Inc, supra,* p 447.

[64] *Ferriter v Daniel O'Connell's Sons, Inc,* fn 1, *supra. Contra, Early v United States,* 474 F2d 756, 758-759 (CA 9, 1973) (Alaska law); *Pleasant v Washington Sand & Gravel Co,* 104 US App DC 374, 375-376; 262 F2d 471 (1958); *Meredith v Scruggs, supra* (Hawaii law); *Turner v Atlantic C L R Co,* 159 F Supp 590 (ND Ga, 1958) (South Carolina law); *Hill v Sibley Memorial Hospital,* 108 F Supp 739 (D DC, 1952); *Jeune v Del E Webb Construction Co,* 77 Ariz 226, 227; 269 P2d 723 (1954); *Borer v American Airlines, Inc, supra,* p 451; *Clark v Suncoast Hospital, Inc,* 338 So 2d 1117, 1118-1119 (Fla App, 1976); *Halberg v Young, supra; Hankins v Derby,* 211 NW2d 581, 584-585 (Iowa, 1973); *Hoffman v Dautel,* 189 Kan 165, 167-169; 368 P2d 57 (1962); *Sabatier v Travelers Ins Co,* 184 So 2d 594, 595 (La App, 1966); *Eschenbach v Benjamin,* 195 Minn 378; 263 NW 154 (1935); *Bradford v Union Electric Co,* 598 SW2d 149 (Mo App, 1979); *Hoesing v Sears, Roebuck & Co,* 484 F Supp 478 (D Neb, 1980); *General Electric Co v Bush,* 88 Nev 360, 368; 498 P2d 366, 371 (1972); *Russell v Salem Transportation Co, supra,* p 506; *Duhan v Milanowski, supra; Gibson v Johnston,* 75 Ohio Law Abstract 413; 144 NE2d 310, 313 (Ohio App, 1956); *Roth v Bell,* 24 Wash App 92, 101-104; 600 P2d 602 (1979). The Michigan Court of Appeals reached the same result in *Hayrynen v White Pine Copper Co,* 9 Mich App 452; 157 NW2d 502 (1968).

[65] See the opinions of the New Jersey and California Supreme Courts in the *Russell* and *Borer* cases, *supra.*

sensus regarding the impolicy of subjecting a negligent defendant to liability to members of the victim's family other than the spouse.

## V

The Equal Protection Clauses of the United States and Michigan Constitutions[66] do not require recognition of a child's cause of action for loss of parental consortium.

Plaintiffs argue that the right to recover for loss of consortium grows out of society's interest in protecting the integrity of the family unit and its constituent relationships, and that the injury to a family relationship sustained by the child of a negligently injured parent cannot rationally be distinguished from the loss suffered by the parent's spouse. They also contend that allowing a child to recover for loss of society and companionship in a wrongful death action if a parent is fatally injured, yet denying a child the right to recover the same element of damages if a parent's injury is not fatal—a state of affairs the Court views as anomalous—deprives children whose parents are nonfatally injured of the equal protection of the laws. Plaintiffs thus challenge as under-inclusive two distinct classifications, one stemming from judicial recognition of a cause of action in the spouse but not in the child, the other a by-product of legislative supplementation of the common law to create a remedy for the next of kin of persons fatally injured through the fault of another.

## A

The acts of a state court, as well as those of a state legislature, must comply with the dictates of

_____

[66] US Const, Am XIV; Const 1963, art 1, § 2.

the Fourteenth Amendment.[67] It is unclear whether a court faced with an equal protection challenge to a judicially established rule of law should employ the same measure of scrutiny it would apply had that rule been promulgated by the Legislature. Plaintiffs urge that a more exacting review is required.[68]

The traditional "rational basis" test reflects a deference to the judgment of the coordinate branch of government charged with enacting statutes, which generally draw distinctions and fall upon some more heavily than upon others. What alternative test plaintiffs would have this Court employ under the circumstances of this case is not evident.

This is not a proper case for strict scrutiny, *i.e.*, requiring a demonstration that the classification is necessary to further a compelling state interest. Assuming that a direct state interference with a family relationship may be subjected to strict scrutiny because a fundamental interest is at stake, a classification which limits the availability of a tort remedy for injury done to family relationships

[67] *Shelley v Kraemer,* 334 US 1, 17; 68 S Ct 836; 92 L Ed 1161 (1948).

[68] Plaintiffs direct our attention to *Deems v Western Maryland R Co,* 247 Md 95, 102; 231 A2d 514 (1967), where the court said, in overruling prior decisions that a wife could not recover for loss of consortium:

"[W]hen this Court is asked to examine a legal doctrine which it has laid down in past decisions in the light of a constitutional claim not previously raised, our function is somewhat different than it is when the constitutionality of a statute is attacked. In the latter situation, there is the presumption of the validity of the legislative enactment. The action reviewed is that of a separate depository of the sovereign power. When a court must review its own decisions, the action is one of self-examination."

However, the *Deems* court went on to conclude, not that the failure to recognize the wife's action violated equal protection, but that policy considerations weighed in favor of its recognition. The opinion did not articulate a standard for a court to employ in the process of "self-examination".

does not constitute an interference with the relationship. Nor does distinguishing among family relationships constitute a suspect classification triggering strict scrutiny.

We would not be justified in invoking a more rigorous standard of review than to require that the classification bear a reasonable relation to the object of the action for loss of consortium—a modified form of "middle tier" or "means" scrutiny.[69]

One may reasonably distinguish the husband-wife relationship from the parent-child relationship in deciding whether to provide a remedy for loss of an injured person's society and companionship. Spousal consortium includes an element of sexual relations not present in the parent-child relationship. Close society and companionship between spouses typically endures for the length of the marital relationship, ideally for a lifetime, while the interaction of parent and child often, though not always, attenuates as the child matures.[70] Injury to one's spouse may have a more devastating impact upon one's daily life and family responsibilities than injury to a parent. Finally, because the average parent has more than one child, the recognition of the child's action poses greater problems of multiplicity of claims and complication of litigation. Limiting the action for loss of an injured person's society and companionship to the spouse assures that the typically greater loss will be compensated without unduly

[69] See Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv L Rev 1 (1972); Nowak, Rotunda & Young, Constitutional Law, pp 525-526.

Of course, judge-made classifications may, as here, result from the evolution of the common law rather than from conscious judicial division of some larger class.

[70] Cf. *Garza v Kantor*, 54 Cal App 3d 1025, 1028; 127 Cal Rptr 164 (1976).

burdening the judicial system or engendering excessive social costs.

## B

Nor does it violate equal protection to deny the children of negligently injured parents the right to recover losses for which the children of fatally injured parents are compensated under the wrongful death act. As the California Supreme Court has noted, there are "two significant distinctions between the child whose parent is killed and one whose parent is disabled, both of which flow from the fact that in the latter case the living victim retains his or her own cause of action".[71]

Whether or not it was an accurate historical statement, Lord Ellenborough's famous dictum that "[i]n a civil court, the death of a human being could not be complained of as an injury"[72] was accepted as declaratory of the common law. The harshness of this rule and its apparent incentive to inflict death rather than injury inspired legislatures to create statutory remedies for "the most grievous of all injuries".[73] Allowing recovery for the lost affection and society of a fatally injured person assures that a meaningful remedy will be available in every case without regard to whether that person was a wage earner or contributed to the support of the spouse, parent or child in whose interest the action is maintained. "Recovery for loss of affection and society in a wrongful death action thus fulfills a deeply felt social belief that a tortfeasor who negligently kills someone should

---

[71] *Borer v American Airlines, Inc, supra,* p 451.

[72] *Baker v Bolton,* 1 Camp 493; 170 Eng Rep 1033 (1808).

[73] Prosser, *supra,* § 127, p 902.

not escape liability completely, no matter how unproductive his victim."[74]

But where the parent injured by the tortfeasor's conduct survives, so does the parent's cause of action for the injuries inflicted. If the primary victim of the accident may bring an action, there is no need to permit other family members to recover in order to provide some compensation for the family and to prevent the tortfeasor from escaping liability altogether.

Further, where the parent survives the injury, certain aspects of the child's loss, *e.g.,* impairment of the parent's ability properly to care and provide for his children, can be compensated in the parent's own action. But where the parent dies, compensation for loss of parental care and services can be recovered only through a wrongful death action. Whether or not this compensation encompasses recovery for the child's loss of society and companionship in addition to more pecuniary items such as lost wages from which support would have been furnished, the availability of some reparation for disadvantage to the child and to the victim's family furnishes a sufficient basis for allowing the child to recover for lost society and companionship in the case of a parent's death but not in the case of parental injury.[75]

## VI

Although we would not permit the child of a negligently injured parent to bring a separate action for loss of the parent's society and companionship, we would permit the injured parent, in his or her own action, to recover certain damages

---

[74] *Borer v American Airlines, Inc, supra,* p 452.

[75] The Eighteenth Century English common law recognized precisely the same distinction. See fn 10, *supra.*

resulting from the effect of the parent's injury upon the child. Injury which removes a parent from the home for a substantial period, or which disables the parent from providing the degree of affection, society and companionship previously provided the child, may necessitate expenditures by the parent to obtain for the child services or companionship that the parent would normally have provided. Although the child should have no independent right of recovery, the cost of substitute services should be recoverable in the injured parent's action.

## VII

We would reverse the decision of the Court of Appeals and affirm the summary judgment granted by the trial court.

COLEMAN, C.J., and RYAN, J., concurred with LEVIN, J.