AUTO CLUB INSURANCE ASSOCIATION v DeLaGARZA

Docket No. 82113. Argued November 3, 1988 (Calendar No. 13). Decided August 22, 1989.

Auto Club Insurance Association brought an action in the Ingham Circuit Court against Mary A. DeLaGarza, its insured, seeking a declaration that under the terms of an applicable policy of insurance she is not entitled to recover uninsured motorist benefits for the death of a nonresident spouse. Mrs. DeLaGarza's spouse had been struck and killed by an uninsured motor vehicle, and she had sought uninsured motorist benefits under her policy. The court, James T. Kallman, J., granted summary disposition for the defendant, ruling that the policy provided coverage even though the decedent was not a resident of the defendant's household. The Court of Appeals, DANHOF, C.J., and McDONALD and E. M. THOMAS, JJ., while finding that the policy language clearly excluded coverage of a nonresident spouse, affirmed in an unpublished opinion per curiam on the ground that the defendant is an insured and that the uninsured motorist coverage provision in the plaintiff's policy did not require that the insured person seeking benefits be the one who sustained the bodily injury (Docket No. 94603). The plaintiff appeals.

In an opinion by Justice CAVANAGH, joined by Justices BRICKLEY, BOYLE, and ARCHER, the Supreme Court held:

Under the terms of the applicable insurance policy, to the extent that the defendant is entitled to recover for bodily injury to her spouse from the driver of the uninsured motor vehicle under the wrongful death act, she is entitled to benefits under the terms of the uninsured motorist portion of the insurance contract.

1. A contract is said to be ambiguous when its words reasonably may be understood in different ways. Where a fair reading of an entire insurance contract may lead to an understanding that coverage is provided under particular circumstances, and

REFERENCES

Am Jur 2d, Automobile Insurance §§ 295, 314.
See the Index to Annotations under Automobile Insurance; Uninsured Motorist.

another fair reading to an understanding that there is no coverage under the same circumstances, the contract is ambiguous and should be construed against its drafter and in favor of coverage. It is appropriate for the insurer to bear the burden of any confusion which arises due to its failure to clearly state the limitations of coverage. In this case, if the insurer intended to except wrongful death damages or to limit coverage to bodily injury sustained only by an insured person, it could have included limiting language in its policy of insurance.

2. Because a fair reading of the uninsured motorist provision in this case leads to two reasonable conclusions, the insurance policy is ambiguous. Consistent with generally accepted principles of contract interpretation, the ambiguity is to be construed against the drafter and in favor of coverage.

Affirmed.

Justice LEVIN, dissenting, stated that he would reverse the decision of the Court of Appeals. The primary function of uninsured motorist coverage is to provide protection to an injured insured person, not to provide protection to family members who may suffer loss as a result of another person's injury. Recovery by an insured from an insurer for loss of consortium arising as a result of physical injury to another person is beyond the ambit of automobile insurance and any reasonable expectation of a reasonable person who has purchased uninsured motorist coverage. In this case, the language of the limits of liability provision appears to recognize that a claim for derivative damages may be asserted under the uninsured motorist coverage, i.e., by a spouse for loss of consortium, but only where the injured person is an insured person under the policy. The plaintiff's husband, the injured person, was not an insured person under the policy.

Chief Justice RILEY, joined by Justice GRIFFIN, dissenting, stated that a fair reading of the uninsured motorists section of the automobile insurance contract in this case indicates that the estranged husband of the defendant was not covered under the policy. The coverage provided only applies to the insured person, a resident spouse or relative, or any other person occupying the named insured's car. Because the defendant's estranged husband's death did not involve any of these situations, and because it was not argued that the insured reasonably expected coverage for his death, the provisions of the policy were not fatally ambiguous.

INSURANCE — UNINSURED MOTORISTS — AMBIGUITY.

An uninsured motorist provision in a contract of automobile insurance, which provided that an insured person was entitled

to recover damages for bodily injury that the insured was legally entitled to recover from the owner or operator of an uninsured vehicle, and which did not explicitly limit such recovery to injuries sustained by insured persons, was ambiguous, entitling the insured to recover for damages arising from the wrongful death of a nonresident spouse as a result of an accident involving an uninsured motorist, where the insured had a cause of action against the motorist.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C.* (by *Thomas C. Lefler, Jr.*); *Bendure & Thomas* (by *Nancy L. Bosh*), of counsel, for the plaintiff.

*Abood, Abood & Rheaume, P.C.* (by *Michael J. Otis, Debra S. Hirsch,* and *William E. Rheaume*), for the defendant.

CAVANAGH, J. We granted leave to consider whether, under the terms of the automobile insurance policy issued by plaintiff, the defendant insured is entitled to recover uninsured motorist benefits for the death of her spouse. To the extent that the defendant is entitled to recover for bodily injury to her spouse from the driver of the uninsured motor vehicle under the wrongful death act,[1] we agree with the Court of Appeals that she is entitled to benefits under the terms of the uninsured motorist portion of the insurance contract.

I

The dispute between these parties arises from an automobile accident which occurred on September 2, 1984. The defendant's spouse, Manuel S. DeLaGarza, was struck and killed by an uninsured motor vehicle while he was changing a tire on another uninsured vehicle alongside the highway. The defendant and her husband did not reside in

---

[1] MCL 600.2922; MSA 27A.2922.

the same household at the time of the accident, and they had lived apart for several years prior to that time.

The defendant sought benefits under the uninsured motorist portion of her insurance policy with plaintiff Auto Club Insurance Association. Auto Club denied the claim on the ground that it was not obligated to provide coverage because Mr. DeLaGarza was neither an insured person nor an occupant of an insured vehicle at the time of the accident.

After defendant filed a claim for arbitration, Auto Club filed the present declaratory judgment action, claiming that the applicable policy of insurance does not provide for uninsured motorist coverage for a nonresident spouse. Auto Club moved for summary disposition, pursuant to MCR 2.116(C)(10). Following a hearing on June 3, 1986, the trial court ruled that the insurance policy provides coverage even though the decedent was not a resident of defendant's household. The court denied Auto Club's motion for summary disposition and granted summary disposition in favor of defendant.

Plaintiff appealed in the Court of Appeals. The Court disagreed with the trial court and found that the policy language clearly excludes a nonresident spouse from coverage. The decision of the trial court was affirmed, however, on the ground that the defendant is an insured person and that the uninsured motorist coverage provided for in plaintiff's policy does not require that the insured person seeking benefits be the one who sustained the bodily injury.

We granted plaintiff's application for leave to appeal[2] to consider whether or not the Court of

---

[2] 430 Mich 891 (1988).

Appeals correctly interpreted the uninsured motorist provision of the insurance contract.

II

Defendant Mary DeLaGarza purchased an automobile insurance policy from Auto Club and paid an additional premium for uninsured motorist coverage. The uninsured motorist portion of the insurance contract provides:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. Bodily injury must be caused by accident and arise out of the ownership, operation, maintenance or use of the uninsured motor vehicle.

The Court of Appeals agreed with the defendant that she is entitled to benefits under this provision because she is an insured person who is entitled to recover for bodily injury to her spouse from the driver of the uninsured motor vehicle under the wrongful death act. The Court explained:

> Although when drafting this provision, plaintiff may have intended that the insured person seeking benefits under the policy be the one who sustained the bodily injury, plaintiff failed to include such limiting language. Thus, although plaintiff argues that the contract read as an entire instrument suggests that an insured may recover for only his or her own injuries, the language of the provision does not lend itself to such an interpretation.

Auto Club contends that the Court of Appeals gave a strained and forced construction to the terms of the policy, extending them beyond their plain meaning and ignoring the obvious intent of the policy language. According to Auto Club's

analysis, the policy, when read as a whole, only provides uninsured motorist coverage for injuries sustained by an insured person. Auto Club argues that the decedent cannot be considered an insured person because the general definition section of the policy requires a "spouse" to reside in the same household as the named insured.

Although we do not disagree with Auto Club's claim that the decedent cannot be considered an insured person under the policy, our decision rests on the conclusion that defendant, the named insured, is entitled to coverage under the uninsured motorist provision as drafted by Auto Club. The appropriate construction of the terms of an automobile insurance policy was addressed in *Raska v Farm Bureau Ins Co,* 412 Mich 355, 362; 314 NW2d 440 (1982):

> A contract is said to be ambiguous when its words may reasonably be understood in different ways.
> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.
> Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.

There can be no doubt that Mary DeLaGarza is an "insured person" under the terms of the policy. The death of DeLaGarza's husband is within the policy's definition of "bodily injury," which includes the "death of any person." Thus, the policy does not explicitly limit recovery for bodily injury to those injuries sustained by insured persons. Because defendant would have a cause of action

for the wrongful death of her husband,[3] she claims that she is entitled to coverage under the language of the policy as an insured person legally entitled to recover damages from the owner or operator of an uninsured motor vehicle.

We broadly define an ambiguity in an insurance policy to include contract provisions capable of conflicting interpretations,[4] and we agree with the Court of Appeals that the contract of insurance at issue here is, at best, ambiguous. When an insurance contract is determined to be ambiguous and the rules of construction outlined by this Court in *Raska* are applied, the terms of the contract are construed against its drafter and in favor of coverage.[5]

Auto Club claims that it did not intend to contract for uninsured motorist coverage for the death of a nonresident spouse. Insurers may limit the risks they choose to assume and fix premiums accordingly. *Lehr v Professional Underwriters,* 296 Mich 693, 696; 296 NW 843 (1941). It is the insurer's responsibility, however, to clearly express the insurance policy's limitations on coverage.[6]

When, as in the present case, an insurer has failed to clearly express a limitation on coverage so as to fairly apprise the insured of the extent of the coverage purchased, it is appropriate to construe the provision under consideration against its

---

[3] Plaintiff does not dispute this fact.

[4] Counsel for Auto Club essentially conceded during oral argument in this Court that the contract provision at issue here could be construed as defendant suggests.

[5] Judge Learned Hand reasoned that "insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion." *Gaunt v John Hancock Mutual Life Ins Co,* 160 F2d 599, 602 (CA 2, 1947), cert den 331 US 849 (1947).

[6] *Kast v Citizens Mutual Ins Co,* 125 Mich App 309, 311; 336 NW2d 18 (1983); *Illinois Employers Ins v Dragovich,* 139 Mich App 502, 506; 362 NW2d 767 (1984).

drafter.[7] This Court discussed this principle in *Pietrantonio v Travelers Ins Co,* 282 Mich 111, 116; 275 NW 786 (1937), stating:

> It is a principle of law too well established in this jurisdiction and others to need discussion or citation of authorities, that a policy of insurance couched in language chosen by the insurer must be given the construction of which it is susceptible most favorable to the insured; that technical constructions of policies of insurance are not favored; and that exceptions in an insurance policy to the general liability provided for are to be strictly construed against the insurer. [Citation omitted.]

Although Auto Club claims that its policy clearly excludes coverage under the circumstances of this case, we cannot agree. It is appropriate for the insurer to bear the burden of any confusion which arises due to its failure to clearly state the limitations of the coverage purchased. If Auto Club intended to except wrongful death damages or to limit coverage to bodily injury sustained only by an insured person, it could have included limiting language in its policy of insurance.

We are not persuaded that our decision in *Brad-*

---

[7] See 7 Williston, Contracts (3d ed), § 900, pp 19-20, in which Professor Williston explains the judicial predisposition toward the insured as follows:

> The fundamental reason which explains this and other examples of judicial predisposition toward the insured is the deep-seated, often unconscious but justified feeling or belief that the powerful underwriter, having drafted its several types of insurance "contracts of adhesion" with the aid of skillful and highly paid legal talent, from which no deviation desired by an applicant will be permitted, is almost certain to overreach the other party to the contract. The established underwriter is magnificently qualified to understand and protect its own selfish interests. In contrast, the applicant is a shorn lamb driven to accept whatever contract may be offered on a "take-it-or-leave-it" basis if he wishes insurance protection.

*ley v Mid-Century Ins Co,* 409 Mich 1; 294 NW2d
141 (1980), requires a contrary result. In *Ruesing v
Aetna Casualty & Surety Co,* a case consolidated
with *Bradley,* we considered a claim for uninsured
motorist coverage similar to the claim presented
here. Ruesing claimed that he was entitled to
recover uninsured motorist benefits for the death
of his son. His son had taken his automobile and
had allowed a friend to drive. Due to the friend's
negligence, Ruesing's vehicle was involved in an
accident, and Ruesing's son was killed. Because
the liability portion of the automobile insurance
policy did not provide coverage when Ruesing's
automobile was being driven without his permis-
sion, Ruesing sought benefits under the uninsured
motorist portion of his policy. Ruesing argued that
because he would be entitled to maintain a wrong-
ful death action for the friend's negligence, he was
eligible for coverage. This Court denied coverage,
reasoning:

> Were we to accept this argument, we would
> attribute to the Legislature an intent to mandate
> coverage in all cases where a liability insured has
> a relative whose death was caused by a negligent
> uninsured motorist and whose property, had he
> died intestate, would devolve in any part upon the
> insured, although the relative did not reside in the
> household of the insured and may have been a
> distant relative living in a different state.
> We think that the Legislature meant that unin-
> sured motorist coverage must be provided to pro-
> tect those "insured thereunder" when they them-
> selves suffer "bodily injury, sickness or disease,
> including death, resulting therefrom" and not to
> protect them when loss is incurred as a result of
> personal injury sustained by others. [409 Mich 41-
> 42.]

Our task in *Bradley* and its companion cases

was to consider the effect of contractual limitations on uninsured motorist coverage. Prior to October 1, 1973, insurers were required by § 3010 of the Insurance Code[8] to include uninsured motorist coverage in all liability policies unless the insured rejected the coverage. We determined that the principal purpose of § 3010 was to reduce claims against the motor vehicle accident claims fund, thereby protecting the fiscal integrity of the fund. The uninsured motorist amendment was repealed after the passage of the no-fault act because persons injured by uninsured motorists could then turn to the assigned claims facility as a source of recovery for damages except pain and suffering and excess economic loss. 409 Mich 52-53.

Unlike the present case, *Ruesing* required an interpretation of statutory language and considerations of legislative intent.[9] The insurance policy language at issue in this case is not at odds with a statutory provision, and the *Bradley* decision actually provided the means for the insurer to have prevented coverage in situations similar to the present case. Different considerations, such as the relative bargaining power of the parties and the reasonable expectations of the insured, arise when a court is asked to interpret the provisions of a contract. *Royal Globe Ins v Frankenmuth Mutual Ins Co,* 419 Mich 565, 573; 357 NW2d 652 (1984).

We recognize that the insurance industry has an interest in ensuring that its obligations are predictable. We also recognize that insurers have a legitimate interest in avoiding the risk of incur-

[8] MCL 500.3010; MSA 24.13010, repealed by 1972 PA 345, effective October 1, 1973.

[9] *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 611; 321 NW2d 668 (1982) ("[t]he primary purpose of statutory construction is to ascertain and give effect to the intention of the Legislature").

ring liability for damages compensable under the wrongful death act. Due to the fact that consumers have little or no real bargaining power when purchasing insurance contracts, however, insurers are required to clearly state limitations on coverage, and insurers must bear the responsibility for the lack of clarity and precision in their insurance contracts.

Because a fair reading of Auto Club's uninsured motorist provision leads to two reasonable conclusions, we hold that it is ambiguous. In accordance with generally accepted principles of contract interpretation, we construe that ambiguity against the drafter of the provision and in favor of coverage. The decision of the Court of Appeals is affirmed.

BRICKLEY, BOYLE, and ARCHER, JJ., concurred with CAVANAGH, J.

LEVIN, J. (*dissenting*). The primary function of uninsured motorist coverage[1] is to provide protection to an injured insured person, not to provide protection to family members who may suffer loss (e.g., of consortium) as a result of another person's injury.

Where an injured insured person dies, his *personal representative* may seek to recover for wrongful death under the uninsured motorist coverage. The question whether a *spouse* of the deceased person may also seek an uninsured motorist recovery will not, as a practical matter, arise because, however many insureds or policies providing uninsured motorist coverage there may be,[2]

[1] Plaintiff Auto Club argues that this is the sole function of uninsured motorist coverage.

[2] See *Bradley v Mid-Century Ins Co*, 409 Mich 1, 23, 48; 294 NW2d 141 (1980).

recovery for loss caused by an uninsured motorist is generally limited to an aggregate of $20,000 for injury to one person.

The question here presented, whether the spouse of an injured person may recover under the uninsured motorist coverage, may arise where the injured person's loss is less than $20,000 or, as here, the injured person is not an insured covered under the provision of a policy providing for loss caused by uninsured motorists. Because automobile insurance does not generally protect against loss other than direct loss suffered by an insured person, I would be inclined to hold, in accord with *Bradley v Mid-Century Ins Co,* 409 Mich 1, 41; 294 NW2d 141 (1980), that a spouse may not recover from her insurer for loss of consortium[3] were it not for the language of the limits of liability provision in the instant case which appears to recognize that a claim for "derivative damages" may be asserted under the uninsured motorist coverage. This provision states that the limit of liability is $20,000 for bodily injury sustained by one "insured person,"

---

Although *Bradley* construed a statute and this Court rested its holding on its reading of legislative intent, the uninsured motorist provision of the automobile insurance policy preceded the enactment of the legislation adverted to in *Bradley.* The nature of uninsured motorist coverage has not changed, either before the enactment or since repeal of that legislation, since it was first introduced by the insurance industry in 1956. See 2 No-fault and Uninsured Motorist Automobile Insurance, § 22-30[1]; anno: *Rights and liabilities under "uninsured motorist" coverage,* 79 ALR2d 1252-1253; *Bradley, supra,* p 23.

[3] In *Berger v Weber,* 411 Mich 1; 303 NW2d 424 (1981), this Court held that a child can recover for loss of consortium in respect to injury to his parent. Under today's decision, if DeLaGarza's deceased husband had a child living anywhere in Michigan, who had an automobile insured with uninsured motorist coverage phrased as is the policy provision in this case, that child could recover or possibly, depending on the limits of liability provisions or how they are read, find himself in a race of diligence with his mother or stepmother plaintiff Mary DeLaGarza.

and "[t]his limit also includes all claims for derivative damages allowed under the law."[4]

The limits of liability provision thus appears to permit recovery, under the uninsured motorist coverage, by a spouse for loss of consortium, but only where the injured person is, as stated in the limits of liability provision, an "insured person" under the policy. DeLaGarza's spouse was not, we all agree, an insured person under the policy.[5]

I am unable to join in the Court's disposition on the basis that there may be another reading of the uninsured motorist provision, and there is thus an ambiguity. Recovery by an insured from his insurer for loss of consortium arising as a result of physical injury to another person is beyond the ambit of automobile insurance and any reasonable expectation of a reasonable person who has purchased uninsured motorist coverage.

I would reverse the decision of the Court of Appeals.

RILEY, C.J. (*dissenting*). I agree with the general principle set forth by the majority that ambiguities within an insurance contract are to be construed in favor of coverage. As the majority notes, construction of the terms of an automobile insur-

---

[4] The Auto Club has not responded to DeLaGarza's argument that this language means that a wife can recover under the uninsured motorist coverage for her "derivative" loss arising out of the injury to and the death of her husband.

Nor has the Auto Club asserted in this declaratory judgment action that by reason of her husband's death DeLaGarza's claim may be asserted only as a claim for wrongful death by her husband's personal representative. See *Burns v Van Laan,* 367 Mich 485; 116 NW2d 873 (1962).

[5] It is customary for the owner of an automobile to purchase his own automobile insurance. A spouse living in a house owned by and insured under a homeowner's policy purchased by the other spouse from whom she is separated might not, however, customarily purchase public liability and tangible property insurance. "Household," like most words when read in the entire context, verbal and otherwise, may be protean.

ance policy was addressed by this Court in *Raska v Farm Bureau Ins Co,* 412 Mich 355, 362; 314 NW2d 440 (1982):[1]

> A contract is said to be ambiguous when its words may reasonably be understood in different ways.
>
> If a *fair reading of the entire contract of insurance* leads one to understand that there is coverage under particular circumstances and *another fair reading* of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.
>
> Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear. [Emphasis added.]

While the majority purports to follow the rule which requires a "fair reading of the entire contract," in fact it has chosen to hold as ambiguous a fifteen-page insurance contract on the basis of a strained analysis of one sentence.

However, I believe that a fair reading of this automobile insurance contract indicates that the estranged husband of the defendant was not covered under the policy. Moreover, throughout the course of this matter, the defendant has never argued that her estranged husband was intended to be covered, or that she believed he was covered, under her policy. Therefore, I would hold that the uninsured motorist provision of the policy is not ambiguous and that the defendant is not entitled to benefits for the death of Mr. DeLaGarza.

I

The present dispute involves the section of the

---

[1] *Ante,* p 213.

contract titled, "Part IV—Uninsured Motorists Insurance Coverage." Specifically, under the subtitle "Uninsured Motorists Coverage," it provides:

> We will pay damages for *bodily injury* which an *insured person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle. Bodily injury* must be caused by accident and arise out of the ownership, operation, maintenance or use of the *uninsured motor vehicle.*[2]

The majority feels that the first sentence of this paragraph, "does not explicitly limit recovery for bodily injury to those injuries sustained by insured persons." *Ante,* p 213. Thus, the majority argues that it could be reasonably understood to mean that the automobile insurance policy provides benefits for the wrongful death of the defendant's estranged husband merely because he was struck by a hit-and-run motorist. I disagree.

A fair reading of the entire contract begins with the definitions of the emphasized words as provided in the policy. Looking to the definitions in the uninsured motorist section, "Insured Person(s) means: you, if an individual, and any relative, any other person occupying your car." The general definition section at the beginning of the policy defines "you" to include your spouse. However, the policy definition of "spouse" is clearly limited to "your husband or wife *if a resident of your household.*" In this case, the defendant's estranged husband was not a member of the insured's household and had not been so for the seven years preceding his death. Therefore, as acknowledged by the majority, he was not an insured person under the policy.

---

[2] The emphasis indicates the words which were printed in bold, block letters in the policy. This was to alert the policyholder that these words were defined within the policy.

The definition of "uninsured motor vehicle" includes "a hit-and-run motor vehicle of which the operator and owner are unknown and which makes physical contact with you or a relative, or a motor vehicle which an insured person is occupying . . . ." Using the same definitional analysis, Mr. DeLaGarza was neither a resident spouse nor an insured person with whom the hit-and-run driver made contact. Further, the car Mr. DeLaGarza was occupying at the time of his accident was not occupied by an insured person. Because Mr. DeLaGarza's accident did not involve an insured person, an insured person's automobile, or a car occupied by an insured person, I am not persuaded that the uninsured motorists provision is so ambiguous that it should be read to provide Mrs. DeLaGarza benefits as a result of her estranged husband's death.

II

12A Couch, Insurance (2d ed), § 45:634, p 127, provides, "[a]n insured or an insured vehicle must be involved in the accident in order to collect under the [uninsured motorist] endorsement." This Court followed the rule when it decided *Ruesing v Aetna Casualty & Surety Co,* a companion to *Bradley v Mid-Century Ins Co,* 409 Mich 1; 294 NW2d 141 (1980). In *Ruesing,* the insured argued that he should recover benefits under the uninsured motorist provision of his policy because he was legally entitled to recover for the death of his son under the wrongful death act. In rejecting this argument, this Court unanimously held:

> Were we to accept this argument, we would attribute to the Legislature an intent to mandate coverage in all cases where a liability insured has

a relative whose death was caused by a negligent uninsured motorist and whose property, had he died intestate, would devolve in any part upon the insured, although the relative did not reside in the household of the insured and may have been a distant relation living in a different state.

We think that the Legislature meant that uninsured motorist coverage must be provided to protect those "insured thereunder" when they themselves suffer "bodily injury, sickness or disease, including death, resulting therefrom" and not to protect them when loss is incurred as a result of personal injury sustained by others. [409 Mich 41-42.]

The majority attempts to distinguish *Ruesing* as "an interpretation of statutory language and considerations of legislative intent." *Ante,* p 217. However, I remain unpersuaded. While it is true that the present action involves an insurance contract as opposed to a statute, the issue and the insured's argument in *Ruesing* were identical to those currently before this Court. Also, the policy language in question in this case was taken verbatim from the statute interpreted in *Ruesing, supra.*[3]

It is not unreasonable to assume that insurance companies adopted standard uninsured motorist endorsements from the repealed statute with the expectation that courts would interpret such lan-

---

[3] MCL 500.3010; MSA 24.13010 provided in pertinent part:

No automobile liability or motor vehicle liability policy . . . shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are *legally entitled to recover* damages from owners or operators of uninsured motor vehicles, . . . because of bodily injury, sickness or disease, including death, resulting therefrom, unless the named insured rejects such coverage in writing as provided herein.

guage consistently. For nearly a decade, this Court has provided insurers a legitimate reason to expect that damages compensable under the wrongful death act would not be compensable under an uninsured motorist provision. Just as this Court refused to attribute to the Legislature an intent to "mandate coverage in all cases where a liability insured has a relative whose death was caused by a negligent uninsured motorist," I would not now attribute such an intent to the plaintiff. To do so would expose all insurers to untold risks from which they reasonably expected to be protected.

### III

The majority holds that the plaintiff "has failed to clearly express a limitation on coverage so as to fairly apprise the insured of the extent of the coverage purchased . . . ." *Ante,* p 214. The implication here is that the insured reasonably expected the extent of her coverage to include benefit payments for the death of her estranged husband. However, the insured has never argued that she expected her uninsured motorist coverage would extend to Mr. DeLaGarza.[4]

Moreover, the insured has never advanced *any* evidence of her expectations. During both Mrs. DeLaGarza's deposition and the summary disposition hearing it was never contended that the insured reasonably expected to invoke her unin-

---

[4] See Note, *A reasonable approach to the doctrine of reasonable expectations as applied to insurance contracts,* 13 U Mich J L R 603, 620 (1980). "No coverage or primary liability should be created where none was contemplated by the insured." The note also provides that the doctrine of reasonable expectations directs a court's attention on the insured's reasonable expectations during contract formation, "when the most accurate assessment of the parties' original intentions may be obtained." *Id.* However, the author warns, "[m]ore troublesome is that the only available evidence of an insured's expectations may be his self-serving testimony." *Id.* at 619.

sured motorist provision as a vehicle to recover wrongful death benefits. In fact, Mrs. DeLaGarza's initial argument was that the policy did not specifically exclude nonresident spouses from coverage. This argument was correctly rejected by the Court of Appeals. Nevertheless, the Court of Appeals found the uninsured motorist coverage subsection to be ambiguous.

I believe that the analysis offered by Professor Robert E. Keeton in his advancement of the doctrine of reasonable expectations is instructive:

> The conclusion is inescapable that courts have sometimes invented ambiguity where none existed, then resolving the invented ambiguity contrary to the plainly expressed terms of the contract document. To extend the principle of resolving ambiguities against the draftsman in this fictional way not only causes confusion and uncertainty about the effective scope of judicial regulation of contract terms but also creates an impression of unprincipled judicial prejudice against insurers. If results in such cases are supportable at all, generally it is because the principle of honoring policyholders' reasonable expectations applies. [Keeton, *Insurance law rights at variance with policy provisions,* 83 Harv L R 961, 972 (1970).]

Because the insured has not argued her reasonable expectations were any different than that of the insurer, the "ambiguity" being decided by the majority today appears to be judicially created. Thus, the majority raises the specter of Professor Keeton's "unprincipled judicial prejudice" against insurers without the saving reason that it supports the reasonable expectations of this policyholder.[5]

---

[5] According to Widiss, *Uninsured motorist coverage: Observations on litigating over when a claimant is "legally entitled to recover,"* 68 Iowa L R 397, 429-430 (1983), over the past twenty-five years of appellate decisions resolving suits over uninsured motorist insurance

CONCLUSION

The *Raska* Court said that a contract is ambiguous when its words may be "reasonably understood" in different ways. However, in limiting the scope of what is reasonable, this Court continued, "[s]till, the expectation that a contract will be enforceable other than according to its terms surely may *not* be said to be reasonable." 412 Mich 362 (emphasis added). In pointing out that the insured does not always prevail if there is an ambiguity, the Court of Appeals has held that "[i]t is still the duty of the courts to determine the true intent of the parties insofar as this is possible. A patently unreasonable interpretation of a contractual ambiguity will not be employed merely to allow the insured to recover his losses." *Smith v Lumbermen's Mutual Ins Co,* 101 Mich App 78, 83; 300 NW2d 457 (1980).

A fair reading of the uninsured motorists section of the policy before us indicates that coverage only applies to the insured person, a resident spouse or relative, or any other person occupying the named insured's car. Because Mr. DeLaGarza's death did not involve any of these situations, and because it was not argued that the insured reasonably expected coverage for the death of her estranged husband, I do not find the insurance contract fatally ambiguous. Therefore, I would reverse the decision of the Court of Appeals.

GRIFFIN, J., concurred with RILEY, C.J.

coverage, many of the disagreements regarding the extent of coverage "seem to be more a product of divergent attitudes about the purpose of the insurance than of the actual inadequacies in the definition of the coverage terms."

The purpose of uninsured motorist coverage reflects a strong public policy in favor of providing indemnification for persons who are injured by uninsured motorists. *Id.* at 427. In the present case, the defendant was not the person injured. Therefore, her claim is not within the ambit of the policy favoring coverage.