25 F.3d 1047
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 CONTINENTAL CASUALTY COMPANY, an Illinois corporation, in it
own right and as Subrogee of Edward C. Levy
Company, a Michigan corporation,
Plaintiff-Appellant, Cross-Appellee,
v.
GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation,
Defendant-Appellee, Cross-Appellant.
 Nos. 92-1970, 92-1973.
 United States Court of Appeals, Sixth Circuit.
 June 10, 1994.
 
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This appeal and cross-appeal are brought by an excess insurer and a primary insurer who dispute the apportionment of liability for a work accident. Continental Casualty Company ("Continental"), the excess insurer, appeals two matters: (1) the district court's grant of summary judgment for the primary insurer, Great American Casualty Company ("Great American"), on several issues that affect the extent of Great American's liability under its primary insurance policy; and (2) the jury verdict in Great American's favor on the issue of Great American's good faith defense of an underlying action. Great American cross-appeals the district court's grant of summary judgment for Continental on its claim that Great American's primary policy limited the liability of Great American to $2,000,000, rather than only $1,000,000. For the reasons stated below, we reverse in part and affirm in part the district court's disposition of this case.
 
 
 2
 * The accident that gave rise to this entire matter occurred in 1969. Edward Levy Company ("Levy") had a contract with Ford Motor Company ("Ford") to remove slag and debris from one of Ford's work sites. The Ford-Levy contract included a clause in which Levy assumed all responsibility for injuries due to Levy's negligence or the joint negligence of Ford and Levy.[1]
 
 
 3
 Before Levy hauled away debris and slag from the Ford work site, the waste was weighed on a truck scale. While using the truck scales, Frederick Denlar, a Levy employee, fell from his truck. The accident left Denlar a quadriplegic, and he received worker's compensation benefits.
 
 
 4
 Levy was insured under two policies written by Great American, an Employer's Liability Coverage, and a comprehensive general liability policy. The Employer's Liability Coverage provided a $100,000 per person limit for employer's liability. The comprehensive general liability policy provided two types of coverage that are relevant to this litigation: a $1,000,000 per person limit for bodily injury liability ("Coverage A"),[2] and a $1,000,000 per person limit for contractual bodily injury liability ("Coverage Y").[3] Continental also insured Levy under an excess umbrella liability policy.
 
 
 5
 Mr. Denlar died from his injuries in 1973 and his estate sued Ford in 1974 ("Denlar-Ford suit"). Ford then tendered its defense to Levy since their contract contained the "save harmless" clause. Levy timely notified Great American of the tender, but neither Great American nor Levy accepted Ford's offer. Subsequently, Ford tendered its defense to Great American twice, but Great American continued to refuse the tender. Ford also informed Great American that Denlar's estate had offered to settle the claim for $350,000, plus a waiver of the Great American's worker's compensation lien of $125,000. Great American, however, would not waive its lien. Instead, Great American provided assistance to Denlar's estate in the suit in an effort to recover on its lien.
 
 
 6
 The case proceeded to trial, and the jury awarded Denlar's estate $1,500,000. Ford appealed and lost, thereby adding costs and interest to the judgment. See Gage v. Ford Motor Co., 301 N.W.2d 517 (Mich.Ct.App.1980). Ford then paid the Denlar estate, and sued Levy on the indemnification clause ("Ford-Levy suit"). Great American provided a defense to Levy pursuant to its policy. In 1983, a Michigan state court granted Ford's motion for summary judgment and ordered Levy "to indemnify Ford for $2,351,628.29 plus costs and interest." Continental Casualty Co. v. Great Am. Ins. Co., 711 F.Supp. 1475, 1478 (N.D.Ill.1989).
 
 
 7
 Great American then appealed on behalf of Levy to the Michigan Court of Appeals. To perfect the appeal, Great American signed an Affidavit of Recognizance in which it agreed to pay $1,000,000 under Coverage Y, plus interest and costs, if the trial court's judgment was affirmed. Continental, as Levy's excess insurer, signed a similar affidavit in which it declared that Levy had $4,000,000 of excess insurance and that Continental would pay the portion of the judgment plus applicable interest that exceeded Great American's liability. Continental, however, reserved its rights to contest the apportionment of liability at a later time.
 
 
 8
 The court of appeals affirmed the judgment in the Ford-Levy suit,[4] and the Michigan Supreme Court denied Levy's application for leave to appeal. The judgment was satisfied in accordance with the affidavits of written recognizance. Great American paid $1,644,638.05 to Ford and Continental paid $2,254,948.32.
 
 
 9
 The suit that led to this appeal was originally filed by Continental in the United States District Court for the Northern District of Illinois to recover the sums it had paid to Ford. Initially, Continental claimed that Great American had breached its duty of good faith towards Levy, for whom Continental was subrogee.[5] On cross-motions for summary judgment, Continental argued that Levy was entitled to payment under both Coverage A and Coverage Y, thus making Great American's liability $2,000,000 rather than $1,000,000.
 
 
 10
 Continental also argued that Great American was obligated to pay $100,000 under the Employer's Liability Coverage. Moreover, Continental asserted that Great American, by the terms of its policy, had agreed to pay post-judgment interest on any amount for which Levy was liable, not just for the post-judgment interest on the amount for which Great American was responsible. Finally, Continental argued that its own liability should be calculated from 1980, the date of the judgment in the action brought by Denlar's estate against Ford, rather than from 1983, the date of judgment in Ford's indemnification action against Levy.
 
 
 11
 The district court ruled in favor of Continental on the issue of Great American's coverage limit under Coverage A and Coverage Y. The court held that, under the terms of Coverage A and Coverage Y, Great American's coverage limit was $2,000,000, not $1,000,000. Continental Casualty Co., 711 F.Supp. at 1483.
 
 
 12
 The district court, however, ruled in favor of Great American on most of the remaining claims. The court found that, by virtue of an incorporation clause in the excess insurance policy, Continental agreed to pay post-judgment interest on any amount that exceeded Great American's liability limit. Id. at 1484-85. The court determined that Great American was not obligated to tender payment under the Employer's Liability Coverage since the policy contained an "other insurance" clause that precluded double recovery. Id. at 1482. The court also held that Continental's liability for sums due should be calculated from the entry of judgment in Ford's indemnification suit against Levy (1983) rather than from the entry of judgment in Denlar's estate's action against Ford (1980). Id. at 1485.
 
 
 13
 Finally, the court denied the parties' cross-motions for summary judgment on the issue of whether Great American breached its duties of good faith to Levy and Continental. At this point, the court granted a motion by Great American for change of venue and transferred the case to the United States District Court for the Eastern District of Michigan.
 
 
 14
 By the time this case reached the district court in this circuit for trial, Continental had amended its complaint to include a breach of contract claim as well as a breach of good faith claim. In its second amended complaint, Continental alleged that Great American had breached its contract with Levy by failing, in the first instance, to tender all amounts due under the primary insurance claim, namely the $1,000,000 limit under Coverage A and the $1,000,000 limit under Coverage Y. The court granted partial summary judgment for Continental on the breach of contract claim[6] and allowed the breach of good faith claim to go to the jury.
 
 
 15
 The jury returned a verdict of "no cause of action" in favor of Great American. Continental then moved for a judgment notwithstanding the verdict or a new trial. The district court denied the motion and Continental and Great American filed timely notices of appeal and cross-appeal.
 
 II
 
 16
 We first address Great American's cross-appeal, namely whether the district court erred in granting summary judgment to Continental on the issue of Great American's liability under Coverage A and Coverage Y. This court reviews de novo the district court's grant of defendants' motion for summary judgment. Baggs v. Eagle-Picher Indus., Inc., 957 F.2d 268, 271 (6th Cir.), cert. denied, 113 S.Ct. 466 (1992). This court will affirm the district court only if it determines that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The district court must view all evidence before it in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).
 
 
 17
 Under Michigan law, an insurer must define clearly and explicitly any limitations or exclusions to coverage. Auto Club Ins. Ass'n v. DeLaGarza, 444 N.W.2d 803, 806 (Mich.1989). If the exclusion is ambiguous, that is, if a genuine issue of uncertainty exists as to which one of two or more meanings is intended, the interpretation favoring the insured is adopted. Id. at 805. In this case, Great American agreed under Coverage A "[t]o pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of bodily injury, sickness or disease, including death an any time resulting therefrom, sustained by any person and caused by accident." Coverage A, however, had an exclusion, (g), providing that "[t]his policy does not apply ... under coverage A, except with respect to liability assumed by [Levy] under a contract as defined herein, to bodily injury to or sickness, disease, or death of any employee of [Levy] arising out of and in the course of his employment by [Levy]...."
 
 
 18
 As Continental argued before the district court, many courts have held that similarly worded exclusionary clauses were only meant to prevent an employee of the tortfeasor from collecting from his "employer for injuries received thru his employer's negligence. A reason for this is that employees are usually covered by workmen's compensation and can recover from the employer, with or without negligence. When negligence is committed by other than his employer, the logic for the exclusion disappears." Zenti v. Home Ins. Co., 262 N.W.2d 588, 590 (Iowa 1978) (quoting General Aviation Supply Co. v. Insurance Co. of N. Am., 181 F.Supp. 380, 384 (E.D.Mo.1960)). See also United States Fidelity & Guar. Co. v. Globe Indem. Co., 327 N.E.2d 321, 323 (Ill.1975) ("the clear intent of the employee exclusion is to preclude an employee from suing his employer for injuries suffered as a result of the employer's negligence").
 
 
 19
 On the other hand, some courts have held that the exclusion applies only to non-employees. For example, in Parfait v. Jahncke Serv., Inc., 484 F.2d 296 (5th Cir.1973), cert. denied, 415 U.S. 957, 94 S.Ct. 1485 (1974), the court stated:
 
 
 20
 [The exclusion] provides expressly that the insurance does not apply to injury to the insured's employees in the course of their employment. The employee status of the injury victim is made the key to the exclusion, not the procedural route by which the liability comes to rest on the insured. Bodily injury coverage of the policy extends only to non-employees.
 
 
 21
 Id. at 306.
 
 
 22
 No Michigan court has explicitly construed the meaning of an exclusion similar to the one in this case. There is one Michigan case, however, that provides some guidance on this issue, Western Fire Ins. Co. v. J.R. Snyder, Inc., 256 N.W.2d 451 (Mich.Ct.App.1977). In that case, a workman employed by a subcontractor was injured on the job and sued the general contractor. The general contractor impleaded the subcontractor pursuant to an indemnity clause. The subcontractor then tendered the defense of the suit to its insurer and the insurer brought a declaratory judgment action as to its obligation to defend. The Michigan court noted that by the terms of the insurance policy, the subcontractor was not covered for "bodily injury to any employee of the insured arising out of and in the course of his employment." Id. at 453. The court then assumed that the insurer was not bound to defend the insured unless an exception to the exclusion was applicable. Id. at 453.
 
 
 23
 The court in Western Fire Ins. implicitly found that exclusions such as exclusion (g) prevent an insured, such as Levy, from collecting on a general insurance policy for injuries sustained by one of its employees while on the job. Since we are bound to follow Michigan law on this issue, we hold that the district court incorrectly granted Continental's motion for summary judgment on this issue. Great American is liable only for $1,000,000 under Coverage Y for the accident.
 
 III
 
 24
 * We now turn to Continental's appeal. The first issue is whether Great American was compelled to tender a $100,000 payment under its Employer's Liability Coverage. The district court found that Levy had paid a premium for the Employer's Liability Coverage that was separate from the premiums paid for the comprehensive general liability policy, which included Coverages A and Y. The district court also found that Levy had contracted to recover only on the higher of the two policies because the comprehensive general liability policy included a valid "other insurance" clause.[7] 711 F.Supp. at 1482. Where the language of an insurance contract is unambiguous, we interpret the rights of the parties to the contract based strictly on the language of the contract. Kozak v. Detroit Auto. Inter-Ins. Exch., 262 N.W.2d 904, 905 (Mich.Ct.Ap.1977).
 
 
 25
 In this case, the district court determined that if Great American had tendered its $100,000 limit under the Employer's Liability Coverage, "there would have been a dollar-for-dollar reduction in its tender under [the comprehensive general liability policy]...." 711 F.Supp. at 1482. Continental, however, argues that under Michigan law, the district court should have found that Great American owed at least $1,100,000. Continental cites Wolverine Ins. Co. v. State Auto. Mut. Ins. Co., 415 F.2d 1182 (6th Cir.1969) to support its position. In Wolverine Ins. Co., the insured carried two separate policies. The court held that since both insurers were liable on their policies, the total damages should be proportioned between them in accordance with the coverages provided for in the policies. Great American argues that Wolverine Ins. Co. is inapposite, but does not point to any case law that supports the district court's conclusion.
 
 
 26
 We agree that Wolverine Ins. Co. is not persuasive because in that case the court was concerned with apportioning damages between two separate primary insurers, whereas we are dealing with only one primary insurer. Even though Continental's argument on this point is unpersuasive, we do not believe that the district court's conclusion is correct.
 
 
 27
 Our reading of the "other insurance" clause indicates that Great American's limit of liability is $1,100,000, rather than $1,000,000. The "other insurance" clause requires Great American to pay out under Coverage Y only in the proportion that the limit of liability in that policy ($1,000,000) bears to the "total applicable limit of liability of all valid and collectible insurance." The "total applicable limit" in this case is $1,100,000, all of which is recoverable from Great American. Coverage Y is approximately 90.9% of the total applicable limit of $1,100,000, and the Employer's Liability Coverage is approximately 9.1% of this total. In sum, when we apply the unambiguous "other insurance" clause, Great American owes, through the Employer's Liability Coverage and Coverage Y, 100% of the loss, up to the total limit of $1,100,000. The "other insurance" clause does not purport to excuse payment on any of the policies, nor does it allow a reduction in liability for Great American in this case.
 
 
 28
 We conclude that the district court erred when it construed the "other insurance" clause in Great American's policy, and summary judgment for Great American on this issue was inappropriate. Consequently, Great American's limit of liability is $1,100,000, rather than $1,000,000.
 
 B
 
 29
 Continental appeals the district court's holding that a clause in Continental's excess insurance policy required Continental to pay post-judgment interest on any amounts adjudged against Levy that exceeded Great American's policy limits.[8]
 
 
 30
 Continental argues that its policy with Levy provided that it would not incorporate any provisions of an underlying policy that are inconsistent with the excess insurance policy. Continental claims that incorporating Great American's standard interest clause is inconsistent with its duty to pay only after Great American had paid its full share, that is all interest charges, under its primary insurance policy.
 
 
 31
 Continental argues that Matich v. Modern Research Corp., 420 N.W.2d 67 (Mich.1988) compels a different conclusion than the one reached by the district court. In Matich, the court held that the primary insurer and the excess insurer were liable for all the post-judgment interest in proportion to the limits of their respective policies because each policy contained a "standard interest clause." Continental claims that Matich stands for the proposition that once a primary insurer includes a standard interest clause in its policy, it, and it alone, is bound to pay all the interest. We find Continental's reading of Matich cramped, if not misleading. If anything, Matich compels the conclusion that both a primary and excess insurer may be liable for post-judgment interest.
 
 
 32
 At best, Continental's construction of the incorporation clause suggests that its meaning is ambiguous. And, as Continental argued elsewhere, under Michigan law, an insurer must define clearly and explicitly any limitations or exclusions to coverage. Auto Club Ins. Ass'n, 444 N.W.2d at 806. If a genuine issue of uncertainty exists as to which one of two or more meanings is intended, the interpretation favoring the insured is adopted. Id. at 805. In this case, even if the language were ambiguous, it would compel a finding in Great American's favor.
 
 
 33
 Consequently, the district court was correct in finding that Continental is liable for post-judgment interest after Great American has paid all of the interest arising out of that part of the judgment which it had an obligation to pay but has not paid.
 
 C
 
 34
 Continental argues that the district court erred in determining that Continental's obligation to tender its excess insurance coverage accrued when the judgment in the Denlar-Ford suit was entered, rather than the date of the judgment in the Ford-Levy suit. Continental offers two cases, McLouth Steel Corp. v. A.E. Anderson Constr. Corp., 210 N.W.2d 448 (Mich.Ct.App.1973), and Grand Trunk W.R.R. Co. v. Pre-Fab Transit Co., 207 N.W.2d 469 (Mich.Ct.App.1973), to support its argument. These cases, however, stand for the modest proposition that an indemnitor is liable for the sum of the judgment, including interest, where the indemnitor is a party to the initial proceedings.
 
 
 35
 Levy, however, was not a party to the original action: it could not have been held liable for any damages until Ford obtained a judgment for indemnification. See Motyka v. Detroit, G.H. & M. Ry. Co., 244 N.W. 897 (1932) (a person who is not a party to a judgment to pay interest is not liable for that interest). Continental, as subrogee of Levy, stands in the shoes of Levy, and since Levy was not bound to pay the judgment at the time of the Denlar-Ford suit, Continental cannot now claim that its liability is dated from that suit and thus advantage itself unfairly. Consequently, the district court's decision to date Continental's liability from the entry of judgment in Ford-Levy suit was correct.
 
 D
 
 36
 Continental contends that the jury's verdict in Great American's favor was against the great weight of the evidence. A judge must set aside a verdict if the judge believes that the verdict is against the great weight of the evidence. Fed.R.Civ.P. 59. A district court's ruling on a motion for a new trial is reviewed for abuse of discretion. Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989).
 
 
 37
 Continental argues that it proved by a preponderance of the evidence that, under Michigan law, Great American breached its duty of good faith. In Michigan, a breach of good faith is established by showing that the insurer: (1) failed to keep the insured fully informed of the developments in a suit that could reasonably affect the insured's interest; (2) failed to inform the insured of all settlement offers that might affect the insured's interests; (3) failed to solicit a settlement offer or initiate settlement proceedings; (4) failed to accept a reasonable compromise offer when the claim indicated clear liability on the insured's part; (5) rejected a reasonable settlement offer; (6) unduly delayed in accepting a reasonable offer; (7) attempted to coerce the insured to contribute to a settlement; (8) failed to make a proper investigation of the claim prior to refusing a settlement offer; (9) disregarded the advice of an adjuster or attorney; and (10) was seriously or recurrently negligent.[9] Commercial Union Ins. Co. v. Liberty Mut. Ins. Co., 393 N.W.2d 161, 165 (Mich.1986). Still, "claims of bad faith cannot be based upon negligence or bad judgment, so long as the actions were made honestly and without concealment." Id. at 164.
 
 
 38
 Reviewing the record as a whole, it appears that Great American may have acted negligently in some instances and stupidly in others, but there is precious little evidence that Great American acted in bad faith. In particular, there was evidence that neither Great American nor Continental believed that Ford would be found liable for Denlar's injuries. The evidence at the time indicated that Levy was an independent contractor rather than a servant of Ford. Had the jury found as much, then Denlar could only have recovered from Levy, and his recovery would have been limited by Michigan's worker's compensation laws.
 
 
 39
 Consequently, the jury's verdict was not against the great weight of the evidence and the district court did not abuse its discretion in denying Continental's motion for a new trial.
 
 E
 
 40
 Continental argues that the district court erred when it denied Continental's in limine motion to bar evidence of Continental's own negligent behavior as the excess carrier, and when it refused to instruct the jury to disregard evidence of Continental's conduct when deciding the issue of bad faith. Continental argues that since it is the subrogee of Levy, it steps into the shoes of Levy and Great American may only raise issues that it could have raised against Levy.
 
 
 41
 Motions in limine to exclude evidence are reviewed for an abuse of discretion. United States v. Phibbs, 999 F.2d 1053, 1075 (6th Cir.1993), cert. denied, 114 S.Ct. 1070 (1994). Also, in reviewing jury instructions for errors or omissions, the court must consider the charge as a whole to see if it fairly and adequately submits the issues and applicable law to the jury. Miller v. Taylor, 877 F.2d 469, 471 (6th Cir.1989).
 
 
 42
 First, the district court did not abuse its discretion in allowing Great American to present evidence on Continental's conduct throughout this ordeal. Great American's evidence of Continental's conduct was not used to prove any affirmative defenses or to prove that Continental was contributorily negligent in handling the case. Instead, Great American introduced the evidence to show that Continental did not question Great American's handling of the case. This evidence, according to Great American, indicates that Great American's handling of the case was not as obviously negligent or haphazard as Continental claimed when it was attempting to show Great American's bad faith. Since the evidence was probative of issues other than Continental's contributory negligence, the district court did not abuse its discretion by denying Continental's motion to exclude evidence of Continental's conduct.[10]
 
 
 43
 Second, although the judge refused to tender the instruction that Continental requested, the jury charge, as a whole, fairly and adequately submitted the issues and applicable law to the jury. Continental requested the following instruction:
 
 
 44
 An excess carrier has no duty to contribute to a settlement or to the defense of the insured until the primary carrier's policy limits were found to be $2 million by a court of law. An excess carrier should not be charged with making sure the primary carrier fulfills its good faith obligations to the insured. Therefore, evidence of Continental's conduct should not be considered in your deliberations....
 
 
 45
 The judge refused this instruction, but he did give the following instruction:
 
 
 46
 An excess insurer has no duty to contribute to a settlement or to the defense of the insured until the primary insurer[']s policy limits have been exhausted. Also, an excess insurer is not responsible for making sure the primary insurer fulfills its good faith obligations to the insured.
 
 
 47
 In light of the instruction given, Continental's argument is without merit.
 
 F
 
 48
 Finally, Continental claims that it was entitled to an evidentiary hearing on the issue of whether the jury refused to follow the instructions of the court and failed to answer truthfully during voir dire. Specifically, Continental alleges that when the district court asked the jury during voir dire if they could judge the case fairly and impartially, they answered yes. Continental contends that the jury held a grudge against Continental for starting a seven-day trial on the day that should have been their last day of jury service. Continental also alleges that even though the district court instructed the jury not to discuss the case until all the evidence was in, the jury disobeyed that order.
 
 
 49
 Motions for a new trial or for an evidentiary hearing on misconduct affecting the jury are committed to the sound discretion of the district judge. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 850 (1984). In this case, the district court held that a juror may not testify about statements made during the course of the jury's deliberations, unless the testimony concerns extraneous prejudicial information or outside influence. See 11 Wright & Miller, Federal Practice and Procedure Sec. 2810 (1973). Since the bases for Continental's complaint about the jury do not concern "extraneous prejudicial information" or "outside influence," the district court did not abuse its discretion in denying Continental's motion for a new trial or for an evidentiary hearing.
 
 IV
 
 50
 For the foregoing reasons, we REVERSE the district court's entry of summary judgment for Continental on the issue of the limit of Great American's liability under Coverages A and Y and the district court's grant of summary judgment for Great American on the issue of its liability under the Employer's Liability Coverage. We AFFIRM the district court's disposition in every other respect.
 
 
 51
 SUHRHEINRICH, Circuit Judge, concurring in part and dissenting in part. I concur in all aspects of the majority opinion, with one exception. The district court held that Great American's coverage was not invoked when judgment was entered in the Denlar-Ford suit but, instead, was only "triggered" when judgment was entered against Levy in Ford's suit for indemnification. The majority, in section III.C., affirms. Respectfully, I must dissent.
 
 
 52
 Great American's duty to indemnify Levy is, of course, a contractual duty. So, too, was Levy's duty to indemnify Ford. By virtue of its contract with Ford, Levy was obligated to indemnify Ford upon two conditions precedent: (1) negligence by Levy which causes, at least in part, injury to a Levy employee, and (2) Ford's being held liable for that injury. Therefore, had Levy admitted that it was negligent regarding Denlar's injuries, or had Levy's negligence been proven in the Denlar-Ford suit, it would be clear that Levy's duty to indemnify Ford arose with the entry of judgment against Ford in the Denlar-Ford suit.
 
 
 53
 Levy denied responsibility, however, forcing Ford to prove, in the Ford-Levy indemnification suit, that Levy's negligence contributed to Denlar's injuries. In my view, the majority mistakes this proof of Levy's duty to indemnify Ford, which did not occur until the Ford-Levy suit, with the fact of that duty, which arose no later than when the last condition precedent had been met. In essence, the majority concludes that a contractual breach does not occur until it has been proven in court. I disagree and would hold that, regardless of when it was proven that Levy had been negligent with regard to Denlar's injuries, the fact of Levy's negligence must, by definition, have occurred prior to Denlar's injuries and, therefore, Levy's duty to indemnify Ford arose upon the occurrence of the second condition precedent to that duty, i.e., the entry of judgment against Ford for Denlar's injuries.
 
 
 54
 Accordingly, because Great American's duty to indemnify Levy necessarily arose at the same time as Levy's duty to indemnify Ford, I would hold that the Great American's liability also dates to the entry of the Denlar-Ford judgment.
 
 
 
 [1]
 The clause read as follows:
 Levy agrees that it shall be responsible for any and all injuries to persons ... which occur as a result of the fault or negligence of Levy, its agents, servants, or employees, or the joint negligence of the agents, servants, or employees of Ford and Levy, in connection with the performance on Ford's premises of work contemplated by this Agreement, and that Levy shall save harmless and indemnify Ford from and against any liability for such injury or damage....
 
 
 [2]
 Coverage A in the Insuring Agreements reads as follows:
 Coverage A--Bodily Injury Liability
 To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.
 
 
 [3]
 Coverage Y, included in the Contractual Liability Endorsement, reads as follows:
 Coverage Y--Contractual Bodily Injury Liability: To pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under any written contract [with certain exceptions], shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.
 
 
 [4]
 See Ford Motor Co. v. Edward C. Levy Co., No. 71584 (Mich.Ct.App. July 23, 1985) (per curiam)
 
 
 [5]
 Continental also claimed that Great American had breached its duty of good faith to Continental. The district court, however, granted summary judgment to Great American on this issue. Continental has not appealed this ruling
 
 
 [6]
 Neither party has appealed this order
 
 
 [7]
 The clause reads as follows:
 If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss....
 
 
 [8]
 The clause in issue reads as follows:
 [Continental] will indemnify [Levy] for loss in excess of the total applicable limits of liability of underlying insurance stated in the schedule. The provisions of the immediate underlying policy are, with respect to Coverage A, incorporated as a part of this policy except for any ... other provisions ... which are inconsistent with this policy.
 Great American's liability for interest is based on the following provision:
 With respect to such insurance as is afforded by the policy, [Great American] shall:
 * * *
 (b)(2) pay all expenses incurred by [Great American], all costs taxed against [Levy] in any [bodily injury] suit and all interest accruing after entry of judgment until [Great American] has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of [Great American's] liability thereon....
 
 
 [9]
 There are two other factors that deal with the insurer's post-judgment conduct, neither of which are relevant in this case
 
 
 [10]
 In a related argument, Continental claims that the district court erred in allowing Great American to mention that its liability under the policy was in dispute throughout the 1980's. Continental claims that it was prejudiced because these references confused the jury. Great American points out, however, that Continental opened the door when it put the matter in issue by arguing that Great American acted in bad faith by only paying $1,000,000 rather than $2,000,000. We agree with Great American